UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  2/3/22
```

Western Waterproofing Company, Inc.,

Plaintiff,

–v–

Zurich American Insurance Company, *et al.*,

Defendants.

20-cv-3199 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Western Waterproofing Company, Inc. ("Western") filed this action against Defendants Zurich American Insurance Company ("Zurich"), Allied World Specialty Insurance Company ("Allied Specialty"), Allied World Assurance Company (U.S.) Inc. ("AWAC"), BDG Gotham Residential, LLC ("Gotham"), and ZDG, LLC ("ZDG").  Western seeks among other relief, declaratory judgments that Zurich and AWAC are obligated to defend and indemnify Western in a related case before this Court, *BDG Gotham Residential, LLC et al v. Western Waterproofing Company, Inc. et al.*, No. 19-cv-06386.  In that related case, Gotham and ZDG seek damages against Western for injuries that Western allegedly caused in a construction project ("the Underlying Lawsuit").  Since this action's initiation, the Court has granted the intervention of five additional insurance companies, Starr Indemnity & Liability Company ("Starr"), Navigators Insurance Company ("Navigators"), Philadelphia Indemnity Insurance Company ("PIIC"), Markel American Insurance Company ("Markel"), and Berkley Insurance Company ("Berkley") (collectively, "the Excess Insurers").

Currently pending before the Court are cross-motions for summary judgment on Zurich's and AWAC's duties to defend Western in the Underlying Lawsuit and a motion filed by Gotham and ZDG to consolidate this action with the Underlying Lawsuit.[1]  The Excess Insurers, who could face financial liability if Zurich is found to have a duty to defend or indemnify Western, also oppose Western's motion for summary judgment and support Zurich's motion for summary judgment.  For the reasons that follow, the Court DENIES Western's motion as to Zurich, GRANTS Zurich's motion as to Western, GRANTS Starr and Navigators' motion as to Western, DENIES Western's motion as to AWAC, and GRANTS AWAC's motion as to Western. Further, the Court DENIES ZDG and Gotham's motion to consolidate.

## I.    Background

## A.  Factual Background

The following facts are drawn from the parties' statements and counter-statements made pursuant to Local Civil Rule 56.1.

### 1.  The Gotham Plaza Project and the Underlying Lawsuit

Gotham, the owner of the land at 158 East 126th Street, New York, New York, in September 2016 contracted with construction manager ZDG for construction of an eleven-story mixed-use building known as the Gotham Plaza Project ("the Project").  Western–Zurich Joint Statement of Facts ("Zurich JSOF") ¶¶ 1–2, Dkt. No. 84; Western–AWAC Joint Statement of Facts ("AWAC JSOF") ¶¶ 1–2, Dkt. No. 83.  In April 2017, ZDG entered into a subcontract with Western for the installation of a curtainwall façade at the Project.  Zurich JSOF ¶ 3.  The subcontract required, among other provisions, that Western "furnish all of the labor, materials,

---

[1] Also pending, but not addressed by this Opinion and Order, is a motion to dismiss crossclaims filed by the Excess Insurers on December 6, 2021.  Dkt. No. 194.

equipment, and services, including, but not limited to, competent supervision, shop drawings, samples, tools and scaffolding as are necessary for the proper performance of the Work," and that it "use its best care, skill and diligence in supervising, directing and performing the Work." AWAC Counter 56.1 Statement ¶¶ 1–2, Dkt. No. 104.  It further required that Western "comply with all applicable city, state and federal laws, rules, regulations and codes of any governmental authority having jurisdiction over the Project."  *Id.* ¶ 3; *see also id.* ¶ 4 (providing that Western is "solely and fully responsible for the safe condition, protection and security of the site, its Work and its own personnel, materials, supplies, tools, vehicles and equipment, whether on or off the Project Site").

On June 25, 2018, performing under the subcontract, Western used a Jekko MPK20 Minipicker ("the Jekko") to lift façade panels into place.  Zurich JSOF ¶ 4.  While lifting a panel into place, the Jekko tipped over, allegedly damaging certain property and injuring two ironworkers under Western's employ, Christopher Jackson and Jorge Delgado.  *Id.* ¶¶ 4–5. Delgado and Jackson filed personal injury suits against Gotham and ZDG and worker compensation claims against Western that are currently pending in New York state court.  *Id.* ¶ 5.

In a letter dated July 13, 2018, ZDG declared Western to be in default under the subcontract "for, among other things and without limitation, its failure to proceed with its work in a timely manner and failure to obey all applicable laws, rules, codes, etc."  Western Counter to Zurich 56.1 Statement ¶ 9, Dkt. No. 110 (quoting AWAC JSOF, Ex. 2).  ZDG provided Western 48 hours to cure its default.  *Id.* ¶ 10.  On August 9, 2018, ZDG sent Western a second letter, this one providing notice of termination for cause under the subcontract. *Id.* ¶ 11 (citing AWAC JSOF, Ex. 3).  That letter stated in part:

3

As a result of the Incident, Western was issued violations by the New York City Department of Buildings ("DOB") for: operating a crane (a) without a permit, (b) without tie-backs and (c) without engineered drawings. Moreover, Western was also cited for not having 16/32 hour rigging certifications for its personnel from an approved provider working with its rigging equipment; its crane operator's failure to provide a certificate license/qualification for the hoisting equipment; and for operating a crane without an Alt 2 permit showing the capacity of the crane, means and methods of rigging and radius parameters. These failures also resulted in similar violations being issued to ZDG.

*Id.* ¶ 12 (quoting AWAC JSOF, Ex. 3).

The letter further listed violations of 13 provisions of the subcontract. *Id.* ¶ 13. Last, it stated, "ZDG will hold Western responsible for and will seek to recover from Western and its surety, all of the costs, damages, expenses and liabilities ZDG has and will incur as a result of Western's defaults and breaches of the Subcontract." *Id.* ¶ 14 (quoting AWAC JSOF, Ex. 3).

On June 4, 2019, Gotham and ZDG filed a suit against Western and Western Surety Company ("Surety"), which has no relation to Western, in New York state court. *Id.* ¶ 6. That action was removed to the Southern District of New York and assigned case number 19-cv-06386. *Id.* Gotham and ZDG's amended complaint raises three causes of action against Western for breach of contract, negligence, and gross negligence, and seeks damages in excess of $37,147,39. AWAC JSOF, Ex. 4 ("the Underlying Complaint"). The Underlying Complaint alleges that Western's acts and omissions "set into motion a chain of events" that resulted in the June 25 accident, "serious physical injury to Christopher Jackson and Jorge Delgado, physical damage to the Premises and the Project (including loss of use), and extensive cost overruns and delays." *Id.* ¶ 41. Further, it states that ZDG had to "replace Western with another subcontractor" to complete the project and that, "[i]n addition to the foregoing, certain portions of the work performed by Western under the Subcontract prior to the termination thereof were defective and required remedial work and/or replacement." *Id.* ¶¶ 42–43. Gotham and ZDG also alleged a breach of contract claim against Surety for its failure to perform under the performance

4

bond following Western's default under the subcontract.  *Id.* ¶¶ 69–72.  The Underlying Lawsuit has proceeded and is presently in discovery.  *See* No. 19-CV-06386, Dkt. No. 81 (S.D.N.Y. Nov. 17, 2021).

### 2. Zurich's coverage

At the center of the present cross-motions are two insurance policies.  The first of these policies was issued by Zurich.  ZDG maintained a Contractor Controlled Insurance Plan ("CCIP"), which provided certain insurance coverage to contractors that provided direct labor to the Project and were enrolled in the CCIP.  Zurich JSOF ¶ 7.  The CCIP included a Commercial Insurance policy issued by Zurich, effective from November 16, 2015, to November 16, 2019, which contained a Commercial General Liability Coverage Form (the "Zurich CGL Policy").  *Id.* ¶ 8 (citing Zurich JSOF, Ex. 4).  Also included in the CCIP was a Workers Compensation and Employers Liability Policy issued by another Zurich Company, American Zurich Insurance Company (the "Zurich WC/EL Policy").  Zurich Counter 56.1 Statement ¶¶ 5–6, Dkt. No. 98. Western qualifies as a named insured under both the Zurich CGL Policy and the Zurich WC/EL Policy.  *Id.* ¶¶ 3–4, 6–9.

The Zurich CGL Policy provides that Zurich "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury" or 'property damage' to which this insurance applies.  [Zurich] will have the right and duty to defend the insured against any 'suit' seeking those damages.  However, [Zurich] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."  *Id.* ¶ 24.  To be covered, "[t]he 'bodily injury' or 'property damage' [must be] caused by an 'occurrence.'"  *Id.*  An occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  *Id.* ¶ 25.

5

Bodily injury is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.* ¶ 26.  Property damage includes both "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured."  *Id.* ¶ 27.  This coverage is subject to a series of exclusions that preclude coverage by Zurich.  *Id.* ¶ 28.  The Zurich CGL Policy has a limit of $2 million for each occurrence, subject to deductibles.  Western Counter to Excess Insurers 56.1 Statement ¶ 7, Dkt. No. 171.

Western in a letter dated September 10, 2019, notified Zurich of the Underlying Lawsuit and sought coverage for defense and indemnity.  Zurich JSOF ¶ 9.  Zurich on October 10, 2019, disclaimed coverage for the Underlying Lawsuit.  *Id.* ¶ 12.  In its letter, Zurich stated that the Underlying Complaint did not allege an "occurrence" of "property damage," that the Business-Risk Exclusion precluded coverage, and that the Contractual-Liability Exclusion precluded coverage.  Zurich JSOF, Ex. 8 at 4–6.  It further reserved its rights to decide whether the Professional-Liability Exclusion applied and to decide whether Zurich was obligated to cover any claims seeking punitive damages against Western, as the Underlying Complaint's gross-negligence cause of action did.  *Id.* at 7.

On January 16, 2020, Western asked Zurich to reconsider its denial, emphasizing that the Underlying Complaint alleged damages caused by both property damage *and* bodily injury.  Zurich JSOF ¶ 13; *see also id.*, Ex. 9.  Zurich in a January 29, 2020 letter reaffirmed its denial of coverage.  Zurich JSOF ¶ 14.  It stated (1) that the Underlying Complaint did not allege "physical damage to the Project outside of Western's working area"; (2) that damages for delay and cost overruns are not covered without property damage to "something other than the insured's work product"; (3) that the Business-Risk Exclusion applied; (4) that the Contractual-

Liability Exclusion applied; and (5) that, as to bodily injury, Gotham and ZDG "are not, nor

could they, seek damages because of a 'bodily injury,'" but only for "economic-related losses."

Zurich JSOF, Ex. 10 at 3–4.  And if the Underlying Complaint did seek damages for bodily

injury, Zurich continued, coverage would be excluded under the Employer-Liability Exclusion

because Delgado and Jackson were employees of Western.  *Id.* at 4–5.

### 3.  AWAC's coverage

The second insurance policy involved here was issued to Western by AWAC.  On

September 6, 2018, Western signed a Contractor's Professional and Pollution Liability

Application for insurance coverage with AWAC.  AWAC JSOF ¶ 8.  AWAC issued an insurance

policy with an effective period of October 1, 2018, to October 1, 2019 (the "AWAC Policy").

*Id.* ¶ 9.  Most relevant here, the AWAC Policy provides that AWAC:

> will pay those sums that the Insured becomes legally obligated to pay as
> professional damages because of a claim resulting from an actual or alleged act,
> error or omission in professional services, provided:
>
>> (1) The claim arises out of professional services rendered on or after the
>> professional liability retroactive date and prior to the expiration of the policy
>> period; and
>>
>> (2) The claim is first made against the insured and first reported to us, in
>> writing, during the policy period or within the extended reporting period . . . .

AWAC Counter 56.1 Statement ¶ 12 (quoting AWAC JSOF, Ex. 6 at 043).

AWAC has a duty to defend Western against any claim that seeks sums payable under

the AWAC Policy.  *Id.* ¶ 13.  The AWAC policy defines "claim" as a "demand, notice or

assertion of a legal right seeking a remedy or alleging liability or responsibility on the part of the

insured."  *Id.* ¶ 14 (quoting AWAC JSOF, Ex. 6 at 061).  Professional services are defined as

"those services and activities shown in ITEM 6 of the Declarations . . . that are rendered by or on

behalf of the named insured."  *Id.* ¶ 15 (quoting AWAC JSOF, Ex. 6 at 065).  Item 6, in turn,

lists: "Value Engineering and field changes to design; construction/project management, design, asbestos, lead or mold abatement, and or environmental remediation services, when part of a construction/project management and or a design build contract and in support of Your Work." *Id.* ¶ 16 (quoting AWAC JSOF, Ex. 6 at 002). The AWAC Policy has a limit of $5 million for each act, error, or omission. *Id.* ¶ 11.

The AWAC Policy requires that "[i]f during the policy period, the insured becomes aware of an act, error or omission in professional services . . . which may be expected to give rise to a claim (thereafter referred to as a 'possible claim') under the policy, the insured must provide written notice to [AWAC] during the policy period." *Id.* ¶ 17 (quoting AWAC JSOF, Ex. 6 at 056). Further, under the Prior Claims or Incidents Exclusion, the AWAC Policy does not cover any "claim, professional damages, mitigation expense, damages, cleanup costs or emergency clean-up costs or actual or alleged act, error or omission in professional services or other circumstances reported by you under any prior policy that was not issued by us or any entity affiliated with the Company or that was known by a responsible manager prior to the inception of the policy period." *Id.* ¶ 19 (quoting AWAC JSOF, Ex. 6 at 049).

On September 25, 2019, Western sent AWAC notice of the Underlying Lawsuit and sought defense and indemnity under the AWAC Policy. AWAC JSOF ¶ 10. AWAC on March 19, 2020, denied coverage for the Underlying Lawsuit. *Id.* ¶ 11. In its letter, AWAC raised four primary reasons for denying coverage: (1) the Underlying Complaint did not allege that Western provided professional services, such as "construction/project management"; (2) ZDG's two letters in 2018 qualify as claims that Western was obligated to report to AWAC; (3) ZDG's two letters also qualify as prior claims or incidents and so are excluded from coverage; (4) Western failed to disclose the known circumstances of the June 25, 2018 incident to AWAC in its policy

application submitted September 6, 2018, violating the terms of the application; and (5) coverage

for the June 25, 2018 incident falls under the separate 2017–2018 policy that AWAC issued to

Western but Western did not timely report the claim under that policy.  AWAC JSOF, Ex. 8 at

4–9; *see also* AWAC Counter 56.1 Statement ¶¶ 20–23.

    **4.  The Excess Insurers**

    In addition to the primary coverage issued by Zurich, ZDG also acquired excess

insurance policies that sit on top of Zurich's coverage.  Starr issued an excess liability policy to

ZDG with a per-occurrence limit of $10 million that sits directly above the Zurich CGL Policy

(the "Starr Excess Policy").  Western Counter to Excess Insurers 56.1 Statement ¶¶ 13–14.

Directly above the Starr Excess Policy sits a policy issued to ZDG by Navigators that also has a

per-occurrence limit of $10 million (the "Navigators Excess Policy").  *Id.* ¶¶ 20–22.  Because

Western is an insured under the Zurich CGL Policy, it is also an insured under both the Starr

Excess Policy and the Navigators Excess Policy.  *Id.* ¶¶ 15–16, 23–25.  In short, Starr and

Navigators could face financial liability if Western is entitled to coverage under the Zurich CGL

Policy but exceeds the per-occurrence limit of $2 million in that policy.  *See generally Ali v. Fed.

Ins. Co.*, 719 F.3d 83, 90 (2d Cir. 2013) ("Excess liability policies . . . provide an additional layer

of coverage for losses that exceed the limits of a primary liability policy.  Coverage under an

excess policy thus is triggered when the liability limits of the underlying primary insurance

policy have been exhausted." (quoting *Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co.*, 514

F.3d 327, 329 (4th Cir. 2008)).  Berkley, PIIC, and Markel are additional Excess Insurers that

issued policies to ZDG that sit atop Starr's and Navigators' Excess Policies.  *See* Dkt. Nos. 137,

175; *see also* Dkt. No 188 (diagramming the Excess Insurers' relationship to the other parties).

    **B.  Procedural history**

Western filed this action against Zurich, Allied Specialty, and AWAC on April 22, 2020.

Dkt. No. 1.  This Court accepted it as related to No. 19-cv-06386 on September 14, 2020.  On

September 24, 2020, Western filed an amended complaint that added as Defendants Gotham and

ZDG.  Am. Compl., Dkt. No. 37.  Western alleges claims for breach of contract against Zurich,

Allied Specialty, and AWAC, seeking declaratory judgments that each is obligated to defend

Western in the Underlying Lawsuit.  *Id.* ¶¶ 59–117.  Against Gotham and ZDG, Western alleges

breach of contract for their failure to seek coverage under a Builder's Risk insurance policy

issued by Allied Specialty that is not at issue in the present motions.  *Id.* ¶¶ 118–36.

Gotham and ZDG on January 29, 2021, filed three counterclaims against Western for

contractual indemnification, common-law indemnification, and for a declaratory judgment.  Dkt.

No. 82.  After Western notified Zurich of the counterclaims, Zurich agreed to defend and

indemnify Western against the contractual-indemnification claim.  Western Counter to Zurich

56.1 Statement ¶ 56.[2]

Starting May 12, 2021, the five Excess Insurers have moved to intervene in this litigation.

Dkt. No. 113.  The Court granted Starr and Navigators' unopposed motion to intervene on June

23, 2021, finding that each has "an interest in the outcome of this action as excess insurers of

Western Waterproofing; that disposing of the action in their absence may impair their ability to

protect that interest; and that existing parties do not adequately represent that interest."  Dkt. No.

126.  For identical reasons, the Court granted PIIC and Markel's unopposed motion to intervene

---

[2] American Zurich Insurance Company agreed to defend and indemnify Western against the
common-law-indemnification claim under the Zurich WC/EL Policy.

on August 9, 2021, Dkt. No. 146, and Berkley's motion to intervene on November 30, 2021, Dkt. No. 188.[3]

The Court on January 15, 2021, granted Western, Zurich, and AWAC's request to file pre-discovery partial motions for summary judgment on Zurich's and AWAC's duties to defend Western.  *See* Dkt. Nos. 74, 78.  The Court stayed discovery in this action but denied a request to stay discovery in the Underlying Lawsuit.  Dkt. No. 78.  Western filed motions against Zurich and AWAC on February 22, 2021.  Dkt. Nos. 86, 89.  Zurich filed a cross-motion against Western, seeking a declaratory judgment that it had no duty to defend or indemnify Western in the Underlying Lawsuit, on March 22, 2021.  Dkt. No. 96.  AWAC filed a cross-motion seeking identical relief on the same day.  Dkt. No. 101.  These four cross-motions were fully briefed as of April 26, 2021.[4]

Starr and Navigators on August 4, 2021, sought a forty-day period to submit "opposition and/or cross motion papers in connection with" pending motion for partial summary judgment against Zurich.  Dkt. No. 145.  In light of the Court's prior unopposed finding that Starr and Navigators "have an interest in the outcome of this action" and raise claims that "share common questions of law and fact with the existing action and that intervention would not prejudice any other party," the Court granted Starr and Navigators' request.  Dkt. No. 146 at 2 (quoting Dkt. No. 126).  To ensure a uniform briefing schedule and the efficient use of judicial resources, the Court administratively denied the pending cross-motions with leave to refile.  *Id.*  The Court on

---

[3] As to Berkley's motion, several parties filed letters stating that they did not oppose Berkley's intervention so long as it did not delay the resolution of the pending motions for summary judgment.  *See* Dkt. Nos. 176, 178.  In granting Berkley's motion, the Court found that Berkley's intervention would "not delay resolution of the pending motions."  Dkt. No. 188.

[4] *See* Western Br. Against AWAC, Dkt. No. 88; Western Br. Against Zurich, 91; Zurich Br., Dkt. No. 97; AWAC Br., Dkt. No. 102; Western Reply Against AWAC, Dkt. No. 108; Western Reply Against Zurich, Dkt. No. 109; AWAC Reply, Dkt. No. 111; Zurich Reply, Dkt. No. 112.

August 17, 2021, denied a motion to reconsider its August 9 decision and adopted the parties'
proposed schedule for refiling and briefing the motions.  Dkt. No. 150.  Western, AWAC, and
Zurich refiled their motions on August 20, 2021, Dkt. Nos. 151, 154–56, and Starr and
Navigators filed a cross-motion for partial summary judgment against Western, seeking a
declaratory judgment that neither has a duty to defend or indemnify Western in the Underlying
Lawsuit, and opposed Western's motion against Zurich.  Dkt. No. 160.  The Excess Insurers'
motion was fully briefed as of November 19, 2021.[5]

On June 15, 2021, Gotham and ZDG filed a motion to consolidate this action with the
Underlying Lawsuit.  Dkt. No. 122.  Zurich, AWAC, Allied Specialty, Starr, and Navigators
filed oppositions to this motion.  Dkt. Nos. 131–34.  Gotham and ZDG filed a reply.  Dkt. No.
143.

The Court on October 29, 2021, granted Western's request to partially lift the stay of
discovery as between Western, Gotham, ZDG, and Allied Specialty, over the opposition of the
Excess Insurers.  Dkt. No. 170.

## II.    Legal standard

### A.  Summary judgment

Summary judgment may not be granted unless all of the submissions taken together
"show[] that there is no genuine dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the
outcome of the suit under the governing law," and is genuinely in dispute if "the evidence is such
that a reasonable jury could return a verdict for the nonmoving party."  *Roe v. City of Waterbury*,

---

[5] Excess Insurers Br., Dkt. No. 161; Western Brief Against Excess Insurers, Dkt. No. 172;
Excess Insurers Reply, Dkt. No. 184.

542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "[I]n making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In seeking summary judgment, the initial "burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994). Where the non-moving party would bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the movant "demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact" to survive summary judgment.  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted) (quoting *Celotex*, 477 U.S. at 323).  The non-moving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993). Additionally, the Court need consider "only admissible evidence," as determined under the

typical "principles governing admissibility of evidence." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).

### B.  Duty to defend

Under New York law, "[a]n insurer's duty to defend its insured is exceedingly broad." *Regal Constr. Corp. v. Nat'l Union Fire Ins. Co.*, 15 N.Y.3d 34, 37 (2010) (cleaned up); *see also Harleysville Worcester Ins. Co. v. Wesco Ins. Co., Inc.*, 314 F. Supp. 3d 534, 542 (S.D.N.Y. 2018), *aff'd sub nom.*, 752 F. App'x 90 (2d Cir. 2019).[6]  The Second Circuit, interpreting New York law, has held that this "duty . . . is broader than [the insurer's] duty to indemnify." *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 97 (2d Cir. 2002).  While the duty to indemnify is generally adjudicated at the end of the proceeding, an "insurer will be called upon to provide a defense whenever the allegations of the complaint suggest a reasonable possibility of coverage." *Regal,* 15 N.Y.3d at 37 (internal quotation marks and alteration omitted).  That is, the duty to defend "arises whenever the allegations within the four corners of the underlying complaint *potentially* give rise to a covered claim." *Frontier Insulation Contractors, Inc. v. Merchs. Mut. Ins. Co.,* 91 N.Y.2d 169, 175 (1997) (internal quotation marks omitted; emphasis added).  "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Century 21, Inc. v. Diamond State Ins. Co.,* 442 F.3d 79, 83 (2d Cir. 2006) (internal quotation marks omitted); *see also Frontier Insulation*, 91 N.Y.2d at 175 ("If any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action.").  Moreover, even if the complaint is *ambiguous* as to a fact material to coverage,

---

[6] The parties agree that whether Zurich and/or AWAC have duties to defend Western under the Zurich CGL Policy and the AWAC Policy is governed by New York state law.  *See* Zurich Br. at 13 n.54; AWAC Br. at 8 n.34; *see also Harleysville Worcester Ins.*, 314 F. Supp. 3d at 541.

the ambiguity must be resolved in favor of the insured. *Int'l Bus. Machs. v. Liberty Mut. Fire Ins. Co.,* 363 F.3d 137, 144 (2d Cir. 2004).

"Though broad, the duty of defense is not boundless." *Ohio Sec. Ins. Co. v. Travelers Indem. Co. of Conn.*, No. 19-CV-1355 (AJN), 2021 WL 797670, at *4 (S.D.N.Y. Mar. 1, 2021). "[A]n insurer can be relieved of its duty to defend if it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision." *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 445 (2002) (quoting *Allstate Ins. Co. v. Zuk*, 78 N.Y.2d 41, 45 (1991)). Moreover, "a court should not attempt to impose the duty to defend on an insurer through a strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable." *Jovani Fashion, Ltd. v. Fed. Ins. Co.*, 416 F. Supp. 3d 334, 343–44 (S.D.N.Y. 2019) (quoting *Northville Indus. Corp. v. Nat'l Union Fire Ins. Co.*, 89 N.Y.2d 621, 634–35 (1997)).

"In New York State, an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract. If the provisions are clear and unambiguous, courts are to enforce them as written. However, if the policy language is ambiguous, particularly the language of an exclusion provision, the ambiguity must be interpreted in favor of the insured." *Vill. of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995); *see also Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 698 (2d Cir. 1998) (explaining that the rule that ambiguities must be construed against the insurer "gains added force when ambiguities are found in an exclusionary clause").

### III.    Discussion

15

The Court will address first whether Zurich, and as a consequence, the Excess Insurers, has a duty to defend Western in the Underlying Lawsuit.  It will then address AWAC's alleged duty to defend.  Last, the Court will consider Gotham and ZDG's motion to consolidate this case with the Underlying Lawsuit.

### A.  Zurich's duty to defend Western

Zurich and the Excess Insurers disclaim any duty to defend Western in the Underlying Lawsuit because, they claim, the Underlying Complaint does not allege an "occurrence" as defined in the Zurich CGL Policy.  In the alternative, they argue that even if an occurrence is alleged, it falls within at least one of three express exclusions in the Zurich CGL Policy: (1) the Contractual-Liability Exclusion; (2) the Business-Risk Exclusion; or (3) the Employer-Liability Exclusion.

#### 1.  The propriety of the Excess Insurers' opposition

As an initial matter, Western argues (1) that the Excess Insurers cannot in a motion for summary judgment seek a declaratory judgment on their duties to defend or indemnify Western in the Underlying Lawsuit because the Excess Insurers have asserted no claims against Western; and (2) that the Excess Insurers' opposition to Western's motion against Zurich is improper because the dispute is between only Western and Zurich.  Western Br. Against Excess Insurers at 13–15.

The Court disagrees with both objections.  Despite repeated opportunities to do so, Western has not objected to any Excess Insurer's intervention.  As the Court previously found, Starr and Navigators "have an interest in the outcome of this action" and "existing parties," including Zurich, "do not adequately represent that interest."  Dkt. No. 126.  This finding, which Western has not sought to rebut, belies Western's characterization of the Excess Insurers as

"interjecting themselves" as mere "friends of the court" in this action.  Western Br. Against

Excess Insurers at 15; *see Kristensons-Petroleum, Inc. v. Sealock Tanker Co.*, 304 F. Supp. 2d

584, 590 (S.D.N.Y. 2004) (stating that an intervenor "enjoys the status of a party and shares . . .

rights as a defendant").

Further, Starr and Navigators are entitled to seek summary judgment on their defense, as

authorized by Federal Rule of Civil Procedure 56.  *See* Fed. R. Civ. P. 56(a) (permitting a party

to "move for summary judgment" on any "claim *or defense*" (emphasis added)).  Western's cited

cases are inapposite, standing for the general proposition that a plaintiff cannot raise new claims

in a motion for summary judgment that are not present in the complaint.  *See* Western Br.

Against Excess Insurers at 14.  By contrast, here, Starr and Navigators have raised defenses to

any duty to defend Western in their pleadings.  *See* Dkt. Nos. 128, 129.  That Western has not yet

alleged claims against Starr and Navigators is attributable directly to Western's failure to file an

amended complaint over the seven months that Starr and Navigators have been party to this case.

Western's failure to amend is particularly notable given that, as with Zurich, Western notified the

Excess Insurers of the Underlying Lawsuit on February 17, 2021.  Western Counter to Excess

Insurers 56.1 Statement ¶ 5; *see also* Premisler Decl., Ex. B, Dkt. No. 162 (February 17 letter);

Maloney Suppl. Decl., Dkt. No. 185 (explaining that Western indicated its intent to file an

amended complaint alleging claims against Starr and Navigators as early as July 7, 2021).  The

Court will therefore proceed with the orderly resolution of all pending cross-motions that

concern duties to defend that stem from the same Zurich CGL Policy.

> **2.  The Underlying Complaint alleges an "occurrence" under the Zurich CGL Policy**

Under the Zurich CGL Policy, Zurich has a "duty to defend" Western in any suit seeking

damages "because of 'bodily injury' or 'property damage' to which this insurance applies."

Zurich Counter 56.1 Statement ¶ 24.  That bodily injury or property damage must be "caused by an 'occurrence,'" which, for present purposes, is defined simply as "an accident."  *Id.* ¶¶ 24–25.

The Court concludes that the allegations of the Underlying Complaint "suggest a reasonable possibility of coverage" by alleging damages incurred because of bodily injury or property damage caused by an accident.  *Regal*, 15 N.Y.3d at 37.  The Underlying Complaint alleges the "occurrence" in question:  On June 25, 2018, the Jekko operated by Western's employees "fell forward" while hoisting a façade panel, striking both Delgado and Jackson. Underlying Compl. ¶¶ 34–37.  And that "accident not only caused personal injuries but also damaged panels and surrounding property and resulted in the loss of use of the Premises and the Project resulting from, *inter alia*, the personal injuries and property damage."  *Id.* ¶ 38.  The Underlying Complaint further alleges that "[a]s a result of the above described events and the abrupt cataclysmic occurrences of June 25, 2018, and the resulting personal injuries and property damage," Gotham and ZDG incurred a series of costs, including "physical damage to the Premises and the Project (including the loss of use), and extensive cost overruns and delays."  *Id.* ¶¶ 39, 41; *see also* ¶ 42 ("The cost overruns . . . included but were not limited to costs to repair or replace damaged work, costs to replace Western with another subcontractor to perform Western's scope of work, and costs due to delay and efforts to mitigate delay, and were caused by, *inter alia*, the abrupt cataclysmic occurrences of June 25, 2018, and the resulting personal injury and property damage.").  These allegations, especially when "liberally construed," *Century 21, Inc.*, 442 F.3d at 83, adequately allege damages because of bodily injury or property damage caused by an occurrence.

Zurich and the Excess Insurers make two primary responses.  *First*, they argue that the Underlying Complaint seeks only damages to replace Western's "faulty workmanship" and not

for damage to property beyond Western's own work product.  Zurich Br. at 16–23; Excess

Insurers Br. at 12–15.  All parties agree that the costs of faulty workmanship—that is, for

example, the cost to replace Western's improperly installed façade panels—fall outside the scope

of the Zurich CGL Policy as a matter of long-standing New York law.  *See, e.g.*, *George A.*

*Fuller Co. v. U.S. Fid. & Guar. Co.*, 200 A.D.2d 255, 259 (N.Y. App. Div. 1st Dep't 1994)

(explaining that a CGL policy "does not insure against faulty workmanship in the work product

itself but rather faulty workmanship in the work product which creates a legal liability by

causing bodily injury or property damage to something other than the work product"); *Maxum*

*Indem. Co. v. A One Testing Lab'ys, Inc.*, 150 F. Supp. 3d 278, 284–86 (S.D.N.Y. 2015)

(collecting cases and stating that *Fuller* "accurately captures New York law"); *cf. Int'l*

*Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (explaining that an

accident does not include a loss "from an inherent defect, ordinary wear and tear, or intentional

misconduct of the insured").

But the Court disagrees with Zurich and the Excess Insurers' selective reading of the

Underlying Complaint.  Paragraph 43 undoubtedly alleges damages from "work performed by

Western" that was "defective and required remedial work."  Underlying Compl. ¶ 43.  Yet that

paragraph begins with the phrase "[i]n addition to the foregoing."  *Id.*  The "foregoing" includes

the language quoted above that refers to a series of costs that "were caused by, *inter alia*, the

abrupt cataclysmic occurrences of June 25, 2018, and the resulting personal injury and property

damage."  *Id.* ¶ 42.  Further, even if Zurich were correct that "there is no allegation that

Western's faulty work caused damage to . . . other portions of the Gotham Plaza Project," Zurich

Br. at 20—and it is not correct—the Underlying Complaint also alleges "loss of use" of the

Project, Underlying Compl. ¶ 41, which is property damage under the Zurich CGL Policy,

Zurich Counter 56.1 Statement ¶ 27 (defining "property damage" as "[l]oss of use of tangible property that is not physically injured").

*Second*, and related to the previous argument, Zurich and the Excess Insurers argue that the Underlying Complaint does not allege any damages "because of 'bodily injury.'"  Zurich Br. at 24–26; Excess Insurers Br. at 17–21.  To be sure, only Delgado and Jackson, not Gotham or ZDG, are alleged to have suffered bodily injury.  But, as the quoted language above demonstrates, the Underlying Complaint repeatedly alleges that Gotham and ZDG incurred damages *because of* the bodily injury that Delgado and Jackson suffered.  *E.g.*, Underlying Compl. ¶¶ 38 (alleging "the loss of use of the Premises and the Project resulting from, *inter alia*, the personal injuries"); 39 ("As a result of the above described events . . . and the resulting personal injuries . . . the [Department of Buildings] issued several violations and stop work orders . . . effectively stopping all work"); 42 ("The cost overruns . . . were caused by, *inter alia*, . . . the resulting personal injury").

The Excess Insurers additionally argue that "because of" is a term of art with a narrower meaning than simply being "at some point in the chain of events leading up to the claim." Excess Insurers Br. at 18–19.  But the cases upon which the Excess Insurers rely are distinguishable, standing for the distinct principle that it is insufficient that bodily injury occurred "somewhere in the sequential chain of events leading up to" the claim.  *Great Am. Assurance Co. v. PCR Venture of Phoenix LLC*, No. CV-13-00570-PHX-ROS, 2014 WL 11497799, at *4 (D. Ariz. July 30, 2014) (emphasizing that "the claims would exist even if the [non-party] had not suffered any bodily injury").  Here, by contrast, the Underlying Complaint alleges a "direct causal relationship" between bodily injury to Delgado and Jackson and at least a portion of the damages sought.  *Cent. Park Studios, Inc. v. Slosberg*, 959 N.Y.S.2d 88 (Sup. Ct.

2012).  At the least, the Underlying Complaint is ambiguous as to this fact material to coverage, and the Court must resolve that ambiguity in favor of Western.  *See Int'l Bus. Machs.*, 363 F.3d at 144.

The Court therefore concludes that the Underlying Lawsuit alleges an occurrence that is presumptively covered by the Zurich CGL Policy.  The burden thus falls on Zurich and the Excess Insurers to prove that an otherwise-covered claim falls under the ambit of a policy exclusion.  *See Morgan Stanley Grp., Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 276 n.1 (2d Cir. 2000).  "This burden is a significant one; that is, to 'negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case.'"  *Progressive N. Ins. Co. v. Beltempo*, No. 07-CV-4033 (CS), 2009 WL 1357947, at *7 (S.D.N.Y. May 14, 2009), *amended on reconsideration*, 2009 WL 10740066 (S.D.N.Y. June 29, 2009) (quoting *Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co.*, 788 N.Y.S.2d 142, 144 (2d Dep't 2004)).

### 3.   The Contractual-Liability Exclusion does not apply

The first exclusion at issue is the Contractual-Liability Exclusion, which excludes from coverage "'[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."  Western Counter to Excess Insurers 56.1 Statement ¶ 11 (quoting Zurich JSOF, Ex. 4).  That exclusion does not apply to liability for damages (1) "[t]hat the insured would have in the absence of the contract or agreement"; and (2) that are assumed in an "insured contract."  *Id.*

Zurich argues that because the Underlying Complaint alleges liability based on Western's alleged default on its subcontract with ZDG that the Contractual-Liability Exclusion applies. Zurich Br. at 31; Zurich Reply at 10.  But the Underlying Complaint also alleges claims of

negligence and gross negligence that stand apart from Western's contractual liability.  Therefore, Western would allegedly be liable even "in the absence of the [sub]contract" and the first exception to the exclusion applies.  Western Counter to Excess Insurers 56.1 Statement ¶ 11.

### 4.   The Business-Risk Exclusions apply

The next exclusion, the so-called Business-Risk Exclusions, includes several policy exclusions that all narrow the scope of "property damage" covered by the Zurich CGL Policy, namely exclusion j (titled "Damage To Property"), exclusion k ("Damage To Your Product"), exclusion l ("Damage To Your Work"), and exclusion m ("Damage To Impaired Property Or Property Not Physically Injured").  *Id.*  Zurich and the Excess Insurers argue that each of these exclude the Underlying Lawsuit from coverage under the Zurich CGL Policy.  Zurich Br. at 26–30; Excess Insurers Br. at 15–16.

Most of these exclusions—namely, k, l, and m—stand for the same basic principle upon which the parties already agree:  Western cannot seek coverage for property damage constituted of only faulty workmanship or damage to Western's own work.  *See* Western Counter to Excess Insurers 56.1 Statement ¶ 11 (excluding damage to "your product," to "your work," damage caused by a "defect, deficiency, inadequacy" in "your product" or "your work," and damage caused by a "delay or failure" in performing a contract).  But, as already explained, the Underlying Complaint alleges property damages that go beyond faulty workmanship or damage to Western's own work on the Project.  The Court therefore finds that these exclusions—which have a similar scope to the rule in *Fuller*—do not apply.  *See George A. Fuller Co.*, 200 A.D.2d at 260 (concluding that even if an occurrence were covered, it "would fall within the policy's exclusions . . . which except from coverage damage to the insured's work product").

Yet the remaining Business-Risk Exclusion—exclusion j(5)—does defeat Western's claim to coverage on the basis of damages because of "property damage."[7]  That exclusion applies to property damage to "[a]ny part of any 'designated project(s)', including materials, machinery and equipment intended to become a part of the 'designated project(s)', if such 'property damage' occurs during the course of construction."  Western Counter to Excess Insurers 56.1 Statement ¶ 11.  The Court finds that this language unambiguously extends beyond property damage that the accident caused to Western's own work and includes *any* property damage inflicted on *any* portion of the Project during the course of construction.

Notably, Western's brief does not disagree with Zurich's, the Excess Insurers', or this Court's reading of the exclusion but instead only pivots to the uncontroversial argument that "[a]t most, [exclusion j(5)] would exclude damages because of property damage."  Western Reply to Zurich at 18 (noting that "this exclusion does not preclude coverage for the Underlying Plaintiffs' claim for delay and loss of use damages that arose . . . following the *bodily injuries*").  Thus, Western ultimately abandons its position that the property damage alleged in the Underlying Complaint is a basis for Zurich's duty to defend.  Only remaining is Western's argument that Underlying Lawsuit also involves damages because of bodily injury.

### 5.  The Employer-Liability Exclusion applies

Bodily injury is the subject of the remaining exclusion.  The Employer-Liability Exclusion states, in full, that the insurance does not apply to:

"Bodily Injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

---

[7] The version of exclusion j at issue here is an endorsement that replaced the prior language of exclusion j.  Zurich JSOF, Ex. 4 at 61; Western Counter to Excess Insurers 56.1 Statement ¶ 11.

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

Western Counter to Excess Insurers 56.1 Statement ¶ 11.

Zurich and the Excess Insurers argue that the Employer-Liability Exclusion therefore excludes from Western's coverage any claims of damages liability because of bodily injury to Western's employees. Zurich Br. at 32–35; Excess Insurers Br. at 21–22. The Court agrees. All parties agree that Delgado and Jackson were employed by Western at the time of the June 25, 2018 accident. Zurich JSOF ¶ 5. As explained above, the Underlying Complaint claims damages against Western, in part, because of bodily injury to Delgado and Jackson. Western does not suggest that bodily injury to any non-employee was a cause of Gotham and ZDG's damages or that Delgado's and Jackson's injuries did not arise out of their employment. The Employer-Liability Exclusion therefore applies.

Western raises three main responses, none of which persuade. *First*, Western argues that the Employer-Liability Exclusion "is wholly inapplicable to Gotham and ZDG's claims for extensive cost overruns and delays stemming from the stop work orders at the Project after the Accident, i.e., damages *because of* bodily injuries." Western Br. Against Zurich at 19. As explained in its reply, the "nature of the damages sought in the Underlying Lawsuit (delay damages, increased costs, including damages for lost rents, deductibles, loans and loan interest) have nothing to do with the status of the employees as employees of Western." Western Reply Against Zurich at 17.

As an initial matter, this response overlooks the plain language that the "exclusion applies *whether the insured may be liable as an employer or in any other capacity* and to any obligation to share damages with or repay someone else who must pay damages because of the injury." Western Counter to Excess Insurers 56.1 Statement ¶ 11 (emphasis added).  It is therefore irrelevant whether the Underlying Complaint sues Western in its capacity as an employer of Delgado and Jackson.  *See Nautilus Ins. Co. v. Ferreira*, No. 1:20-CV-01053-JL, 2021 WL 3677713, at *7 (D.N.H. Aug. 19, 2021) (concluding that whether a similarly worded exclusion "applies does not appear to depend on the *type* of claim asserted in the underlying suit" (emphasis added)).  More fundamentally, Western's response is in tension with its position that the Underlying Complaint seeks damages "because of 'bodily injury.'"  As the Excess Insurers observe, "Western cannot have it both ways.  If the purported cost overruns or any other alleged losses are 'damages because of bodily injury,' they are necessarily 'damages because of bodily injury' to a Western employee and, hence squarely excluded from coverage."  Excess Insurers Reply at 7.  The Court finds that the Underlying Lawsuit claims damage because of bodily injury but that the claim is excluded from Western's coverage because those bodily injuries occurred to Western's own employees.

*Second*, Western argues that Zurich's invocation of the Employer-Liability Exclusion is inconsistent with Zurich's positions in this and other litigations.  Western Br. Against Zurich at 20.  To start, Zurich agreed to defend Gotham and ZDG under the Zurich CGL Policy in Delgado's and Jackson's state-court suits for bodily injury.  Zurich Counter to Western 56.1 Statement ¶ 10, Dkt. No. 100.  But the Employer-Liability Exclusion plainly does not apply there because Gotham and ZDG did not employ Delgado or Jackson.  Zurich also agreed to defend Western under the Zurich CGL Policy against Gotham and ZDG's counterclaim for contractual

indemnification for bodily injuries to Delgado and Jackson. *Id.* ¶ 9. But as Western itself admits, Zurich agreed to do so pursuant to the last sentence of the Employer-Liability Exclusion, which is an exception for an "insured contract," that does not apply to the Underlying Lawsuit. Western Reply Against Zurich at 16 n.26. Last, Western points to coverage decisions made by American Zurich Insurance Company under the Zurich WC/EL Policy, which is not at issue here.[8] Plainly, decisions made by a non-party pursuant to an entirely separate insurance policy do not cast doubt on Zurich's interpretation of the exclusion at issue here.

*Third*, Western argues that applying the Employer-Liability Exclusion here would be inconsistent with the purpose of such an exclusion. As Western explains, the purpose "is to avoid duplication of an employer's workers' compensation insurance." Western Br. Against Zurich at 20 (citing *Shelby Realty LLC v. Nat'l Sur. Corp.*, No. 06-CV-3260 (NRB), 2007 WL 1180651, at *4 (S.D.N.Y. Apr. 11, 2007), and 9A Couch on Insurance § 129:11 (3d ed. 2014)). Here, Western insists, there is no risk of double-dipping because the Underlying Lawsuit is not covered by workers' compensation. Western Reply Against Zurich at 16–17.

Courts interpret ambiguous provisions of an insurance policy in the insured's favor, taking account of the rationale of the provision. *E.g.*, *Emps' Liab. Assur. Corp. v. Travelers Ins. Co.*, 411 F.2d 862, 865 (2d Cir. 1969) (when interpreting a similar exclusion, observing that "[s]ince either construction would come within the reach of the words, we must look to probable purpose and to good sense"). But such considerations do "not come into play unless this court first determines that the contract is, in fact, ambiguous." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 616–17 (2d Cir. 2001). Western has, as a threshold matter, "fail[ed] to point

---

[8] Specifically, Western notes that American Zurich agreed to defend Western against Gotham and ZDG's common-law-indemnification claim and agreed to defend Western against Jackson's and Delgado's state-court worker compensation claims.

to any ambiguities in the Employee Exclusion that would prevent its application to" the

Underlying Lawsuit.  *U.S. Underwriters Ins. Co. v. 614 Constr. Corp.*, 142 F. Supp. 2d 491, 495

(S.D.N.Y. 2001); *see also Essex Ins. Co. v. Mondone*, 965 N.Y.S.2d 616, 617–18 (2d Dep't

2013) (holding that a similar exclusion is unambiguous).

In any event, applying the Employer-Liability Exclusion to the Underlying Lawsuit is not

inconsistent with the purpose of such exclusions.  The Employer-Liability Exclusion is likely to

extend beyond claims where workers' compensation would apply.  After all, the immediately

preceding exclusion in the policy already excludes coverage for "[a]ny obligation of the insured

under a worker's compensation, disability benefits or unemployment compensation law or any

similar law."  Zurich JSOF, Ex. 4 at 30.  Nor is the holding of *Shelby Realty* to the contrary, as

that court concluded simply that a similar exclusion did not apply because the insured was not an

employer of the individual that suffered bodily injury.  2007 WL 1180651, at *4.  Ultimately,

applying the Employer-Liability Exclusion here is consistent with the basic principle that "[a]

commercial general liability policy is not designed to provide coverage for an employer's

liability for injuries to its employees."  Couch, *supra*, § 129:11.

The Court therefore concludes that the allegations of the Underlying Complaint do not

suggest a reasonable possibility of coverage because they fall within the unambiguous Business-

Risk Exclusions and the Employer-Liability Exclusion.  *See Regal*, 15 N.Y.3d at 37.  As such,

Zurich does not have a duty to defend Western in the Underlying Lawsuit under the Zurich CGL

Policy.

### 6.  Zurich's duty to indemnify Western

Western's amended complaint seeks a declaratory judgment only that Zurich (and

AWAC) has a duty to defend Western in the Underlying Lawsuit.  Am. Compl. ¶¶ 76–79, 114–

17.  Zurich and the Excess Insurers argue that if there is no duty to defend Western under the Zurich CGL Policy then the Court necessarily must declare that there is also no duty to indemnify Western in the Underlying Lawsuit.  Zurich Br. at 15–16; Excess Insurers Br. at 11–12; Excess Insurers Reply at 4 & n.2.  Western argues that such a determination would be premature.  Western Reply Against Zurich at 20–21; Western Br. Against Excess Insurers at 18–19.

The Court agrees with the insurers and concludes that because there is no obligation to defend Western under the Zurich CGL Policy, there is no duty to indemnify either.  The Second Circuit has instructed as much on several occasions.  *E.g.*, *EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.*, 905 F.2d 8, 11 (2d Cir. 1990) ("Initially we note that the duty to defend is broader than the duty to indemnify.  Thus, it is unnecessary to engage in a separate analysis of [the insurer's] independent claim that it has no duty to indemnify apart from both insurers' claims that they have no obligation to defend." (citation omitted)); *Vill. of Sylvan Beach*, 55 F.3d at 116 (reversing a district court's holding that an insurer had a duty to defend and further concluding that because the claims "fall plainly within the exclusion provision," the insurer "has no duty to defend *or indemnify*" the insured (emphasis added)); *MIC Gen. Ins. Co. v. Allen*, 697 F. App'x 717, 720 (2d Cir. 2017) (concluding same, citing *EAD Metallurgical*, 905 F.2d at 11).

Western's case law to the contrary, none of which is binding on this court, is distinguishable because it concerns cases in which the trial court concluded either that there was a duty to defend or in which there was still a dispute as to the insurer's duty to defend.  *See, e.g.*, *Bhd. Mut. Ins. Co. v. Ludwigsen*, No. 16-CV-6369 (CS), 2018 WL 4211319, at *17 (S.D.N.Y. Sept. 4, 2018) (finding "any claim regarding indemnification is not ripe" where "the current record lacks undisputed facts that preclude or mandate application of an exclusion"); *Westport*

*Ins. Corp. v. Hamilton Wharton Grp. Inc.*, 483 F. App'x 599, 604 (2d Cir. 2012) (holding that the district court did not abuse its discretion in finding the claim for indemnification to be premature where the insurer had a duty to defend and a separate state proceeding would determine indemnity); *Specialty Nat. Ins. Co. v. Eng. Bros. Funeral Home*, 606 F. Supp. 2d 466, 472 (S.D.N.Y. 2009) (indemnity premature because insurer had "a duty to defend [the insured] against each of the underlying complaints").  Here, by contrast, "because the duty to defend is broader than the duty to indemnify, a finding by the court that there is no duty to defend automatically means there is no duty to indemnify."  *Boyce Thompson Inst. for Plant Rsch., Inc. v. Ins. Co. of N. Am.*, 751 F. Supp. 1137, 1144 (S.D.N.Y. 1990) (quoting *State of New York v. Blank*, 745 F. Supp. 841, 844 (N.D.N.Y. 1990)).

The Court therefore concludes that because there is no duty to defend Western in the Underlying Lawsuit under the Zurich CGL Policy, there is also no duty to indemnify Western in the Underlying Lawsuit under the Zurich CGL Policy.

## B.  AWAC's duty to defend Western

AWAC also disclaims any duty to defend Western in the Underlying Lawsuit.  It claims, first, that the Underlying Lawsuit does not concern "professional services."  Second, it claims that the claim arose with ZDG's August 9, 2018 letter, and is therefore barred by the AWAC Policy's October 1, 2018 inception date; the Non-Disclosed Known Conditions Exclusion; and the Prior Claims or Incidents Exclusion.  Third, AWAC claims that Western's notice of the Underlying Lawsuit was untimely.  Last, AWAC argues that, at the least, Western's motion should be denied because there is a genuine dispute of material fact as to whether Western's failure to disclose the June 25, 2018 accident in the AWAC Policy application was a material misrepresentation.

### 1. The Underlying Complaint reasonably alleges the rendering of professional services

AWAC has a duty to defend Western in the Underlying Lawsuit only if the Underlying Complaint alleges damages "resulting from an actual or alleged act, error or omission in professional services" by Western.  AWAC Counter 56.1 Statement ¶ 12.  The parties agree the professional service potentially implicated by the Underlying Complaint is "construction/project management" but disagree whether that professional service is adequately alleged in the Underlying Complaint.  *Id.* ¶ 16; *see* Western Br. Against AWAC at 9–12; AWAC Br. at 20–22. AWAC argues further that even if Western allegedly provided professional services, it was not "part of a construction/project management and or a design build contract."  AWAC Br. at 22–24 (quoting AWAC Counter 56.1 Statement ¶ 16).

Under New York law, when a term in an insurance policy is undefined, it should be "read in light of common speech and the reasonable expectations of a businessperson."  *David Lerner Assocs., Inc. v. Phila. Indem. Ins. Co.*, 934 F. Supp. 2d 533, 541 (E.D.N.Y. 2013) (quoting *Parks & Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006)).  And the determination of whether "professional services" like construction/project management were rendered requires a court to "look to the nature of the conduct under scrutiny rather than the title or position of those involved, as well as to the underlying complaint."  *Id.* (cleaned up) (quoting *Reliance Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 691 N.Y.S.2d 458, 460 (1st Dep't 1999)).  Consequently, an insured need not be termed as a "construction manager" by the underlying complaint to trigger the insurer's duty to defend the insured for rendering construction management services.  *Cont'l Cas. Co. v. JBS Constr. Mgmt., Inc.*, No. 09-CV-6697 (JSR), 2010 WL 2834898, at *5 (S.D.N.Y. July 1, 2010) (concluding that

the claim presented "does not compel the conclusion that the services performed by [the insured] with respect to the project were not those of a construction manager").

The Underlying Complaint reasonably alleges that Western is liable for acts, errors, or omissions in rendering professional services.  Among other facts, it alleged that Western was required to "follow all applicable OSHA and DOB safety rules and standards, and to obtain all necessary permits and certifications," Underlying Compl. ¶ 15, that it constructed a "Performance Mock Up" of the façade curtain wall, *id.* ¶¶ 22–23, and that Western was obligated to "obtain all appropriate and necessary approvals, permits, and licenses for all equipment used to perform Western's work," *id.* ¶ 63.  Further, Western's subcontract with ZDG specified that Western "furnish all of the labor, materials, equipment, and services, including, but not limited to, competent supervision, shop drawings, samples, tools and scaffolding as are necessary for the proper performance of the Work," and that it "use its best care, skill and diligence in supervising, directing and performing the Work."  AWAC Counter 56.1 Statement ¶¶ 1–2.[9]  Though Western was not the designated construction manager, at least "some of the tasks it was charged with performing, including monitoring and supervising the construction site, clearly fit within a common-sense understanding of what a 'construction manager' does."  *Cont'l Cas. Co.*, 2010 WL 2834898, at *5.

AWAC has two primary responses.  *First*, it argues that Western did not render "professional services" because its "garden-variety construction obligation d[id] not require the

---

[9] Evidence extrinsic to the Underlying Complaint, like the subcontract, can expand, but not shrink, an insurer's duty to defend.  *Fitzpatrick v. Am. Honda Motor Co.*, 575 N.E.2d 90, 92 (N.Y. 1991) ("[T]he courts of this State have refused to permit insurers to look beyond the complaint's allegations to avoid their obligation to defend . . . ."); *Cont'l Cas. Co.*, 2010 WL 2834898, at *3 (concluding, after surveying New York and Second Circuit law, that facts extrinsic to the underlying complaint cannot relieve an insurer of the duty to defend).

'special acumen or training of professionals.'"   AWAC Br. at 21 (quoting *David Lerner*, 934 F.

Supp. 2d at 541)).   This response has at least two problems.   For one, the Underlying Complaint

is at least ambiguous as to whether Western's duties required special acumen or training.   *See*

*Int'l Bus. Machs.,* 363 F.3d at 144.   Allegations central to the Underlying Complaint include that

Western owed a duty to "engage a licensed engineer to assess the project and create design

drawings showing how the [Jekko] was to be used" and that Western was required to obtain

"ironworkers trained and certified to operate it."   Underlying Compl. ¶¶ 25–27.   More

importantly, the term at issue is not "professional services"—which is defined by the AWAC

Policy—but instead "construction/project management," for which AWAC offers no definition

and of which the Court is not aware of any settled definition.   *See, e.g.*, Sarah B. Biser et al., 33

N.Y. Practice, New York Construction Law Manual § 1:13 (2d ed. 2021) ("There is no

established definition of who a construction manager is or what a construction manager's

responsibilities are or should be; great variations are possible, allowing the role of a construction

manager to be tailored to each job.").[10]   Given an ambiguous term that is undefined in the

AWAC Policy, the Court finds "[t]here is a reasonable possibility that [Western's] services could

be construed as 'construction management' services, based on the plain meaning of the terms."

Western Br. Against AWAC at 12.

　　　*Second*, AWAC argues that even if Western allegedly provided construction management

services, those services were not rendered as "part of a construction/project management or a

design build contract," but instead as part of a "façade installation contract."   AWAC Br. at 22

(quoting AWAC Counter 56.1 Statement ¶ 16).   But this response, while focused on a different

---

[10] In *David Lerner*, the court defined "professional services" because the term was "neither
defined by the policy nor by New York law."   934 F. Supp. 2d at 541.

clause of the same provision, does not avoid the defects in AWAC's prior response.  Western need not have been formally designated as the contract manager of the Project to be acting under a contract management contract.  *See Cont'l Cas. Co.*, 2010 WL 2834898, at *5.  Provisions of the subcontract reasonably support the conclusion that it was a construction management contract.  AWAC Counter 56.1 Statement ¶¶ 1–2.  And the definition of a "construction/project management . . . contract" is no more settled than the definition of "construction management" services.  *See* Biser et al., *supra*, § 1:13.  The Court therefore rejects this argument as well.

The Court concludes that the Underlying Lawsuit is a claim arising from the rendering of professional services that falls within the scope of coverage.  It next considers whether the claim fell within the AWAC Policy's period of coverage and whether an exclusion, "in clear and unmistakable language," applies.  *Progressive N. Ins. Co.*, 2009 WL 1357947, at *7.

### 2.   The August 9, 2018 letter is a claim that predates the AWAC Policy's October 1, 2018 inception date

AWAC's next three arguments—that the Underlying Lawsuit predates the AWAC Policy's October 1, 2018 inception date and that it is subject to two exclusions—rely on the predicate argument that the August 9, 2018 letter qualifies as a "claim."  Specifically, the AWAC Policy requires that, to be covered, a "claim [must be] first made against the inured . . . during the policy period."  AWAC Counter 56.1 Statement ¶ 12.  And each exclusion is preceded by the proviso that "[t]his insurance does not apply to any *claim*" that satisfies the elements of the particular exclusion.  AWAC JSOF, Ex. 6 at 046 (emphasis added); *see also* AWAC Br. at 25, 28 (defining each exclusion as barring coverage for certain "claims").  The Court must therefore determine if the August 9 letter is a "claim" under the meaning of the AWAC Policy.

The AWAC Policy defines a claim as a "demand, notice or assertion of a legal right seeking a remedy or alleging liability or responsibility on the part of the insured."  AWAC

Counter 56.1 Statement ¶ 14 (quoting AWAC JSOF, Ex. 6 at 061).  Under the multiple-claims

provision, "[t]wo or more claims arising out of a single act, error, omission, or incident . . . will

be considered a single claim . . . .  All such claims, whenever made, will be considered first made

during the policy period of the earliest claim was first made."  AWAC JSOF, Ex. 6 at 056.

The August 9 letter alleged several "failures and breaches of the Subcontract" by Western

including that it (1) "operat[ed] a crane (a) without a permit, (b) without tie-backs and (c)

without engineered drawings"; (2) failed to "use its best care, skill and diligence in supervising,

directing and performing the Work"; (3) failed to "comply with all applicable city, state and

federal laws, rules, regulations and codes"; and (4) failed to "obtain and pay for all necessary

permits and licenses needed in connection with the Work."  AWAC JSOF, Ex. 3 at 1–3.  The

letter states further that "ZDG will hold Western responsible for and will seek to recover from

Western and its surety, all of the costs, damages, expenses and liabilities ZDG has and will incur

as a result of Western's defaults and breaches of the Subcontract."  *Id.* at 4.

Plainly, then, the August 9 letter is a "demand, notice or assertion of a legal right seeking

a remedy or alleging liability or responsibility on the part of the insured," Western.  AWAC

Counter 56.1 Statement ¶ 14.  Western resists this straightforward conclusion, arguing that the

August 9 letter is not a claim because it is not "an assertion by a third party that in the opinion of

that party the insured may be liable to it for damages *within the risks covered by the policy*."

*N.Y. State Elec. & Gas Corp. v. Century Indem. Co.*, No. 5:13-CV-976 (TJM/ATB), 2017 WL

11454848, at *13 (N.D.N.Y. Mar. 31, 2017), *aff'd*, 767 F. App'x 188 (2d Cir. 2019) (emphasis

added) (quoting *Am. Ins. Co. v. Fairchild Indus.*, 56 F.3d 435, 439 (2d Cir. 1995)).  The

allegations in the August 9 letter are not covered by the AWAC Policy, Western insists, because,

first, it does not allege an error in rendering professional services and, second, it alleges only

breaches of the subcontract and not any claim of negligence.  Western Reply Against AWAC at 5–9.

The Court cannot displace the definition of "claim" provided in the AWAC Policy with the definition preferred by Western.  *See Marksmen, Inc. v. Interbrand Corp.*, No. 10 CIV. 214 (DLC), 2010 WL 2595103, at *3 (S.D.N.Y. June 28, 2010) ("Courts do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there." (cleaned up)).[11]

But even under Western's definition, the Court concludes that the August 9 letter is a claim.  First, the August 9 letter alleges errors in rendering professional services.  Indeed, the letter alleges most, if not all, of the same errors on which the Underlying Complaint later expanded: that Western operated the Jekko without a permit or trained operator, that it did not use tie-backs, that it failed to use diligence in supervising and directing workers, and that it failed to comply with relevant laws and regulations.  AWAC JSOF, Ex. 3 at 1–3.  For the same reasons that the Court found the Underlying Complaint reasonably alleged the rendering of professional services—to wit, construction management—the Court concludes that the August 9 letter did as well.  Second, it is irrelevant that the August 9 letter did not expressly label these errors as establishing "negligence" by Western.  The letter stated that ZDG would seek liability "as a result of Western's failures *and* breaches of contract," suggesting that liability did not derive solely from the subcontract.  AWAC JSOF, Ex. 3 at 2.  More importantly, under New York law, "the analysis depends on the facts which are pleaded, not the conclusory assertions."  *Allstate*

---

[11] Nor is Western's narrower definition the only one that courts in this circuit follow.  *See, e.g.*, *Home Ins. Co. of Ill. (New Hampshire) v. Spectrum Info. Techs., Inc.*, 930 F. Supp. 825, 846 (E.D.N.Y. 1996) (collecting cases that define a claim as "a demand by a third party against the insured for money damages or other relief owed").

*Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 162 (1992). Whether framed as violations of particular

provisions of the subcontract or Western's tort-based duty to Gotham and ZDG, the August 9

letter alleges an error in rendering professional services and is therefore a claim potentially

covered by the policy.[12]

The Court therefore concludes that the August 9 letter was a "claim" under the AWAC

Policy. *See Seneca Ins. Co. v. Kemper Ins. Co.*, No. 02-CV-10088 (PKL), 2004 WL 1145830, at

*5 (S.D.N.Y. May 21, 2004) (holding that a pre-litigation letter was a "claim" even though it was

sent by only one of two plaintiffs and did not expressly demand monetary damages); *Quanta*

*Lines Ins. Co. v. Invs. Cap. Corp.*, No. 06-CV-4624 (PKL), 2009 WL 4884096, at *12–15

(S.D.N.Y. Dec. 17, 2009), *aff'd sub nom.*, 403 F. App'x 530 (2d Cir. 2010) (concluding that a

withdrawn pre-arbitration demand letter was a claim). Western does not dispute that it predates

the AWAC Policy's October 1, 2018 inception date. And the August 9 letter indisputably arises

out of the same "act, error, omission, or incident"—that is, the June 25, 2018 accident—as the

Underlying Lawsuit. AWAC JSOF, Ex. 6 at 056. Under the multiple-claims provision, the two

are considered a single claim and predate the inception date. The Underlying Lawsuit therefore

falls outside the coverage period of the AWAC Policy.

### 3. The Non-Disclosed Known Conditions Exclusion and the Prior Claims or Incidents Exclusion

Having concluded that the August 9 letter is a "claim," the Court also concludes that the

Underlying Lawsuit is excluded from coverage by both the Non-Disclosed Known Conditions

---

[12] This analysis is not changed by Western's reference to the AWAC Policy's Contractual-Liability Exclusion. Western Reply Against AWAC at 7–8. That exclusion includes the clear exception that it does not apply in the case of an "actual or alleged act, error or omission in professional services." AWAC JSOF, Ex. 6 at 046.

Exclusion and the Prior Claims or Incidents Exclusion.  The Non-Disclosed Known Conditions

Exclusion excludes claim:

> Based upon or arising out of a pollution incident or an actual or alleged act, error
> or omission in professional services or protective professional services in
> existence prior to the inception date of the policy or prior to the effective date of
> an endorsement to this policy and known by or reported to a responsible manager.

AWAC JSOF, Ex. 6 at 018.

> And the Prior Claims or Incidents Exclusion similarly excludes claims:

> Based upon or arising from a claim, professional damages, mitigation expense,
> protective claim, protective loss, damages, clean- up costs or emergency clean-up
> costs or actual or alleged act, error or omission in professional services or
> protective professional services or other circumstances reported by you under any
> prior policy that was not issued by us or any entity affiliated with the Company or
> that was known by a responsible manager prior to the inception of the policy
> period.

*Id.*

Here, provided that the August 9 letter is a "claim" that alleges an error in

rendering professional services, Western does not contest that the remaining two

elements of these exclusions are met.  First, the letter was made known to Western

through delivery by ZDG.  Underlying Compl. ¶ 46.  The letter itself is addressed to

Western's General Counsel and its Regional Manager.  AWAC JSOF, Ex. 3.  Second, the

letter, dated August 9, 2018, was sent "prior to the inception of the policy period."

AWAC JSOF, Ex. 6 at 018.

The Court therefore concludes that AWAC's duty to defend Western in the

Underlying Lawsuit is further excluded by both the Non-Disclosed Known Conditions

Exclusion and the Prior Claims or Incidents Exclusion.

### 4.  Western's failure to notify AWAC of the claim "as soon as practicable"

Even if the claim is dated to when Gotham and ZDG's Underlying Complaint was filed on June 17, 2019,[13] AWAC further argues that Western's failure to notify it of the Underlying Complaint until September 25, 2019, breached Western's obligation to provide notice of a potential claim for professional damages "as soon as practicable."  AWAC Br. at 31 (quoting AWAC JSOF, Ex. 6 at 058).

Under New York law, "a policy stating that notice of an occurrence be given 'as soon as practicable . . . requires that notice be given within a reasonable time under all the circumstances.'"  *Olin Corp. v. Ins. Co. of N. Am.*, 966 F.2d 718, 723 (2d Cir. 1992) (quoting *Sec. Mut. Ins. Co. v. Acker–Fitzsimons Corp.*, 31 N.Y.2d 436, 441 (1972)).  "In some cases, even short delays will render a notice untimely."  *Id.* (citing *Deso v. London & Lancashire Indem. Co.*, 3 N.Y.2d 127, 130 (1957) (notice after 51 days); *Rushing v. Com. Cas. Ins. Co.*, 251 N.Y.302, 304 (1929) (notice after 22 days)).  "A delay may be unreasonable as a matter of law when either no excuse is advanced or a proffered excuse is meritless."  *Mount Vernon Fire Ins. Co. v. King Gen. Constr.*, 159 F.3d 1347, at *2 (2d Cir. 1998) (summary order).  The insured bears the burden of proof.  *Id.*  The insurer "need not demonstrate prejudice to successfully invoke a defense of late notice."  *Travelers Indem. Co. v. Northrop Grumman Corp.*, 3 F. Supp. 3d 79, 103 (S.D.N.Y. 2014), *aff'd*, 677 F. App'x 701 (2d Cir. 2017) (quoting *AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus., Inc.*, 84 F.3d 622, 624–25 (2d Cir. 1996)).

Here, the 100-day delay was, as a matter of New York law, untimely.  *Am. Home Assur. Co. v. Republic Ins. Co.*, 984 F.2d 76, 78 (2d Cir. 1993) (holding that "a delay of at least thirty-six days . . . clearly was untimely" and collecting 8 cases in which notice after 54 or fewer days

---

[13] Western was served the Underlying Complaint on June 17, 2019, prior to its removal to the Southern District of New York on July 10, 2019.  Western Br. Against AWAC at 13.

was untimely); *Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co.*, 421 F. App'x 52,

57 (2d Cir. 2011) (three-month delay unreasonable as a matter of law); *see also Indian Harbor*

*Ins. Co. v. City of San Diego*, 972 F. Supp. 2d 634, 646 (S.D.N.Y. 2013), *aff'd*, 586 F. App'x 726

(2d Cir. 2014) (two-month delay unreasonable as a matter of law); *Rockland Exposition, Inc. v.*

*Marshall & Sterling Enters., Inc.*, 31 N.Y.S.3d 139, 143 (2d Dep't 2016) (stating that a "52–day

delay, if unexcused, was unreasonable as a matter of law"); *Republic N.Y. Corp. v. Am. Home*

*Assur. Co.*, 509 N.Y.S.2d 339, 340 (1st Dep't 1986) (45 days not "as soon as practicable").

Western in its briefing does not address this argument, let alone raise a reasonable

justification for its delay that would excuse its untimely notice to AWAC.[14]  Because timely

notice is a "condition precedent" to AWAC's duty to defend, Western's failure to provide timely

notice is sufficient to defeat its claims against AWAC arising under the AWAC Policy.

*Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 143 (2d Cir. 1995).

### 5.  Western's failure to disclose the June 25 accident in the AWAC Policy application

Finally, AWAC argues that it has no duty to defend Western in the Underlying Lawsuit

because Western failed to disclose the June 25, 2018 accident in its application for the AWAC

Policy.  AWAC Br. at 32–33.  The parties agree that Western did not make this disclosure in the

application.  AWAC JSOF, Ex. 5 (Western's application).  They disagree, however, on whether

that omission constitutes a material misrepresentation such that "the insurer would not have

issued the policy had it known the facts misrepresented."  *Parmar v. Hermitage Ins. Co.*, 21

A.D.3d 538, 540 (N.Y. App. Div. 2 Dep't 2005) (quoting *Zilkha v. Mut. Life Ins. Co. of N.Y.*,

---

[14] The only portion of Western's briefing that could be construed as addressing this issue is its repeated, and legally unsupported, assertion that it "timely reported" the June 17, 2019 complaint to AWAC on September 25, 2019.  *See* Western Reply Against AWAC at 3, 9.

287 A.D.2d 713, 714 (N.Y. App. Div. 2d Dep't 2001)); *see also Home Ins. Co.*, 930 F. Supp. at 841.

Whether an omission was a material misrepresentation is "generally a question of fact for the jury." *Parmar*, 21 A.D.3d at 540. Notably, Western appears to be in full agreement with AWAC that this issue is therefore "not appropriate for pre-discovery dispositive motion practice." Western Br. Against AWAC at 17. Because there are material "questions of fact" that would "warrant discovery" to resolve this issue, this ground alone means the Court could not grant Western's summary judgment motion. *Id.*

The Court concludes that the allegations in the Underlying Complaint do not suggest a reasonable possibility of coverage under the AWAC Policy because they unambiguously fall outside the policy period and within the scope of the Non-Disclosed Known Conditions Exclusion and the Prior Claims or Incidents Exclusion. *See Regal*, 15 N.Y.3d at 37. Further, Western failed to provide timely notice to AWAC. Finally, even setting these issues aside, the Court concludes there is a genuine dispute of material fact as to whether Western's failure to disclose the June 25, 2018 accident in applying for the AWAC Policy was a material misrepresentation. AWAC therefore does not have a duty to defend Western in the Underlying Lawsuit under the AWAC Policy.

### C. The motion to consolidate the cases

The final issue before the Court is the motion to consolidate this action with the Underlying Lawsuit. Consolidation is governed by Rule 42 of the Federal Rules of Civil Procedure, which provides that consolidation is appropriate "[i]f actions before the court involve a common question of law or fact." Fed. R. Civ. P. 42(a); *see also In re CMED Sec. Litig.*, No. 11-CV-9297 (KBF), 2012 WL 1118302, at *1–2 (S.D.N.Y. Apr. 2, 2012). "The trial court has

broad discretion to determine whether consolidation is appropriate," *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284–85 (2d Cir. 1990) (citing *Midwest Cmty. Council, Inc. v. Chi. Park Dist.*, 98 F.R.D. 491 (N.D. Ill. 1983), and *Stemler v. Burke*, 344 F.2d 393 (6th Cir. 1965)), and may be guided in the exercise of that discretion by consideration of "both equity and judicial economy," *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999). "[T]he burden is on the moving party in persuading the court to grant its motion to consolidate." *Solvent Chem. Co. ICC Indus. v. E.I. Dupont De Nemours & Co.*, 242 F. Supp. 2d 196, 221 (W.D.N.Y. 2002).

Gotham, ZDG, and Western argue that this case and the Underlying Lawsuit share common questions of law and fact—namely, Western's liability arising from the June 25, 2018 accident and Gotham and ZDG's resulting damages—that would be more efficiently resolved if consolidated. All insurers—namely, Zurich, AWAC, Allied Specialty, and the Excess Insurers—oppose the motion, arguing that the Underlying Lawsuit's question of liability is distinct both factually and legally from this action's question of insurance coverage.

The Court agrees with the insurers and denies the motion. The factual and legal questions at issue in each case are distinct. As this Opinion and Order itself demonstrates, this action centers on the scope of Western's insurance coverage and the insurers' duties to defend or indemnify Western. Western's responsibility for the June 25, 2018 accident or the precise scope of damages that Gotham and ZDG suffered are largely irrelevant to that analysis, but are central questions in the Underlying Lawsuit. *See Hershfeld v. JM Woodworth Risk Retention Grp., Inc.*, 85 N.Y.S.3d 81, 82 (2d Dep't 2018) (holding that a malpractice action and a coverage action "do not involve common questions of law or fact because" one involved "the alleged negligence . . . and the alleged damages suffered" and the other "alleged contractual obligation to provide insurance coverage"); *Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*, No. 06-CV-

1260 (KAM), 2009 WL 3644159, at *3 (E.D.N.Y. Oct. 27, 2009) (finding consolidation inappropriate where two actions had "some overlap in facts" but the claims "involve[d] different theories of liability and require[d] establishing distinct elements").  The Court has already recognized as much by permitting discovery to proceed in the Underlying Lawsuit while largely staying it in the present case.  *See KGK Jewelry LLC v. ESDNetwork*, 2014 WL 7333291, at *2 (S.D.N.Y. Dec. 24, 2014) ("Courts have routinely denied consolidation motions where there is a stark difference in the procedural posture of the actions, finding that judicial economy would not be served by consolidating two actions at disparate stages of litigation.").  Nor could the two actions be resolved in the same trial, as it would raise an unacceptable risk of prejudice for the insurers.  *See Hershfeld*, 85 N.Y.S.3d at 82 ("[I]t has long been recognized that it is inherently prejudicial to insurers to have the issue of insurance coverage tried before the jury that considers the underlying liability claims, even where common questions of law and fact exist."); *see also Poalacin v. Mall Props., Inc.*, 63 N.Y.S.3d 679 (2d Dep't 2017) (finding the trial court abused its discretion in denying motion to sever liability and coverage actions).

Gotham, ZDG, and Western suggest that consolidating the cases would put all parties in "one room" to settle.  Dkt. No. 130 at 4.  But both cases are presided over by this Court and all relevant parties are parties to the present case.  The parties may therefore seek to settle both actions at any time.

The Court therefore concludes, in the exercise of its discretion, that consolidation is inappropriate.

## IV.    Conclusion

For the reasons above, the Court concludes that there is no duty to defend or indemnify Western in the Underlying Lawsuit under the Zurich CGL Policy.  The Court therefore

GRANTS Zurich's motion for summary judgment on Counts One and Two of the amended

complaint and GRANTS IN PART Starr and Navigators' motion for summary judgment insofar

as their duty to defend or indemnify Western in the Underlying Lawsuit arises from the Zurich

CGL Policy.  The Court DENIES Western's motion for summary judgment against Zurich.

      The Court further concludes that there is no duty to defend Western in the Underlying

Lawsuit under the AWAC Policy.  The Court therefore GRANTS AWAC's motion for summary

judgment on Counts Five and Six of the amended complaint.  The Court DENIES Western's

motion for summary judgment against AWAC.

      The Court DENIES Gotham and ZDG's motion to consolidate.

      Within two weeks of the date of this Opinion and Order, the parties are ordered to submit

a proposed case management plan and a joint letter proposing next steps in the litigation.

      This resolves docket numbers 122, 151, 154, 155, 156, and 160.


      SO ORDERED.


Dated: February 3, 2022
     New York, New York

_____
        ALISON J. NATHAN
      United States District Judge