**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
——————————————————————————X

WESTERN WATERPROOFING COMPANY, INC.
D/B/A WESTERN SPECIALTY CONTRACTORS,

        Plaintiff,

    -against-                                  20 Civ. 3199 (CM)(BCM)

ZURICH AMERICAN INSURANCE COMPANY,
ALLIED WORLD SPECIALTY INSURANCE
COMPANY, BDG GOTHAM RESIDENTIAL, LLC,
ZDG, LLC and AMERICAN ZURICH INSURANCE
COMPANY,

        Defendants,

    -and-

STARR INDEMNITY & LIABILITY COMPANY,
NAVIGATORS INSURANCE COMPANY,
PHILADELPHIA INDEMNITY INSURANCE
COMPANY, MARKET AMERICAN INSURANCE
COMPANY AND BERKELEY INSURANCE
COMPANY,

        Intervening Defendants.

——————————————————————————X

**DECISION AND ORDER GRANTING SUMMARY JUDGMENT MOTION OF**
**DEFENDANT AMERICAN ZURICH INSURANCE COMPANY AND DENYING**
**PARTIAL SUMMARY JUDGMENT MOTION OF PLAINTIFF WESTERN**
**WATERPROOFING**

McMahon, J.:

     On June 25, 2018, Western Waterproofing Company, d/b/a Western Specialty

Contractors – a subcontractor of construction manager ZDG, LLC – was installing a curtainwall

façade at an eleven-story mixed use project known as Gotham Plaza (the "Project"). Western's

employees were operating a Jekko MPK20 Minipicker (a type of crane) to lift the façade panels into place. While lifting a panel, the Jekko tipped over, resulting in a hideous and costly accident. Two Western employees, Christopher Jackson and Jorge Delgado, were seriously and permanently injured, and damage was sustained to the Project and surrounding property.

The Project was immediately halted by a stop work order. Eventually, the New York Department of Buildings ("NYDOB") issued Western and ZDG a slew of violations, including for operating a crane without a permit, tie backs and engineering drawings; not having appropriate rigging certifications or crane operator licenses; and operating a crane without a permit that showed the capacity of the crane, means and methods of rigging, and radius parameters. ZDG terminated Western as a subcontractor and both it and the owner of the building, BDG Gotham Residential LLC, incurred considerable extra expense to complete the Project. Needless to say, everyone has sued everyone else.

This lawsuit is a coverage action, commenced by Western against two insurance companies, one of which is moving defendant American Zurich Insurance Company ("AZIC"). As part of ZDG's Contractor Controlled Insurance Program – essentially, a program that provided certain insurance coverages to enrolled contractors of which Western was one – AZIC issued a Workers' Compensation and Employers' Liability Policy, bearing number WC 0217325-02, with a policy period beginning November 16, 2017 and ending November 16, 2018. The accident admittedly occurred during the policy period.

Western seeks a declaration that AZIC owes a duty to defend Western against claims asserted against Western in what is commonly known as "the Underlying Lawsuit" – an action brought by the owners of the Project against, *inter alia*, Western, seeking to recover as damages the additional costs incurred as a result of the accident. *BDG Gotham Residential, LLC, et al. v.*

2

*Western Waterproofing Company, Inc. d/b/a Western Specialty Contractors, et al.*, Civil Action No 1:19-cv-06386. No damages are sought in the Underlying Lawsuit to compensate the plaintiffs therein (Gotham and ZDG) for any damages suffered by the two grievously injured Western employees; Western admitted as much in a prior Memorandum of Law. Western's Opposition to Zurich American Insurance Company's Motion for Summary Judgment, Dkt. No. 109 at 21 (In "the Underlying Lawsuit, Gotham and ZDG are not seeking to recover any damages they may have to pay to the injured workers. Instead, the damages at issue are all delay-related because of the project shutdown.")

The reader will immediately appreciate that the policy issued by AZIC – a Workers' Compensation and Employers' Liability policy – would not ordinarily be thought to cover the type of purely economic damages sought in the Underlying Lawsuit. However, Western has pleaded (in purely conclusory fashion) that at least some unspecified portion of the damages sought by Gotham and ZDG are "because of bodily injury" suffered by the two Western employees. The complaint in the Underlying Lawsuit (the "Underlying Complaint," or "UC," Dkt. No. 336-2) does indeed allege the undeniable fact that two Western employees were seriously injured in the accident, and that the accident caused bodily injury as well as the physical destruction of property. Western argues that, by mentioning these facts in their complaint, AZIC's employers' liability policy at least arguably affords coverage for the damages sought in that action, thereby triggering a duty to defend – even though no claim for damages is predicated on anyone's bodily injury, and even though Gotham and ZDG would not have to prove that anyone was injured when the crane fell over in order to recover the damages they seek.

The parties have cross moved on the issue of duty to defend. AZIC argues that if it prevails on the duty to defend motion, it necessarily prevails on the issue of coverage, and so seeks summary judgment dismissing the complaint.

Because Western's strained and illogical reading of the Workers' Compensation and Employers' Liability policy in suit makes no sense, its motion for partial summary judgment is denied. AZIC's motion for summary judgment dismissing this action as against it is granted.

## BACKGROUND

### I.   What Is Employers' Liability Insurance?

Before embarking on a discussion of the parties' arguments, the court needs to familiarize the reader with employers' liability insurance, which is the type of policy at issue in this case.

Employers' liability insurance is a particular form of insurance designed to supplement the coverage normally provided by a workers' compensation policy. It is widely recognized that an employers' liability policy serves as a "gap-filler providing protection to the employer in those situations where the employee has a right to bring a tort action despite provisions of the workers' compensation statute." *Institute for Shipboard Educ. v. Cigna Worldwide Ins.*, 821 F. Supp. 181, 187-88 (S.D.N.Y. 1993) (quoting *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 718 P. 2d 920, 928 (CA 1986)); *see also* 16 *Couch on Insurance* § 225:157 (3d ed. 2000); 7B John Alan Appleman, *Insurance Law and Practice* § 4571, at 2 (Walter F. Berdal ed. 1979)("workers' compensation is routinely written in combination with an employer's liability policy to . . . avoid a gap in protection."). It "provides coverage for liability arising from a workplace injury or death by accident or disease when legal action is brought seeking damages, other than those benefits provided under the workers' compensation law." *New York Manual for Workers Compensation and Employers' Liability Insurance*, (March 1, 2023), Dkt. No. 354-5.

Unlike workers' compensation insurance, which an employer must by law acquire, acquisition of employers' liability insurance is purely voluntary.

Workers' compensation and employers' liability insurance are ordinarily written together in New York – as indeed they are in the AZIC policy at issue in this case. That is because the two types of insurance are "inextricably linked." *Cont'l Ins. Co. v. State*, 99 N.Y.2d 196, 199 (2002). In fact, they are not really two types of insurance at all. New York's Insurance Law defines the workers' compensation and employers' liability insurance in the same section and jointly, as "insurance against the legal liability under common law or statute or assumed by contract *for any employer for the death or disablement of, or injury to, his employee.*" N.Y. Insurance Law § 1113[a][15] (emphasis added). In other words, per the Insurance Law, workers' compensation and employers' liability insurance provide coverage for exactly the same types of injury – an employer's liability for the death or disablement of an employee who is injured on the job – and for no other type of injury.

The Insurance Law also differentiates employers' liability insurance from general insurance for personal liability, of the sort found in a Commercial General Liability ("CGL") policy. Indeed, the law specifically carves employers' liability out of the sort of insurance that protects a business against losses for "bodily injury" and "property damage." *See* N.Y. Insurance Law § 1113[a][13] (personal injury liability insurance provides insurance against loss, damage or expense incident to a claim for personal injury but "excluding any kind of insurance specified in paragraph fifteen [workers' compensation or employers' liability insurance]"). The fact that both personal injury liability insurance and employers' liability insurance afford coverage against losses caused by bodily injury to someone does not mean that they are congruent. Quite the contrary; an employers' liability insurance "is not a general liability policy." *Producers*, 718 P.

2d at 928. This was recognized by my colleague, The Hon. Alison J. Nathan,[1] in a prior decision

in this case, when she held that a CGL policy's carve out for employers' liability meant that the

policy did not cover Western's liability to Jackson and Delgado. *See infra.*, p. 20-21.

It is with this background in mind that the court turns to the construction of the

employers' liability policy in this case.

## II.    The Relevant Terms of the Policy At Issue

There relevant terms of Policy No. WC 0217325-02 are as follows:

*A.  How This Insurance Applies*

*This employers liability insurance **applies to bodily injury by accident** or bodily injury by*

*disease. Bodily injury includes resulting death.*

>    1.  The ***bodily injury must arise out of and in the course of the injured employee's
>        employment by you***.

>    2.  *The employment must be necessary or incidental to your work in a state or territory
>        listed in Item 3.A. of the Information Page [New York is a state so listed].*

>    3.  *Bodily injury by accident must occur during the policy period.*

>    4.  *[PURPOSELY OMITTED].*

>    5.  *If you are sued, the original suit and any related legal actions for damages for bodily
>        injury by accident or by disease must be brought in the United States of America, its
>        territories or possessions, or Canada.*

Joint Stipulation of Facts ("JSOF"), Ex. 4, Dkt. No. 336-4 at Part Two, Sec A (emphasis added).

Section A of the policy, which defines the general scope of its coverage, is consistent

with how New York law treats employers' liability insurance – that is, as applying (1) only to

bodily injury, whether by accident or disease, (2) that arises out of and in the course of an injured

employee's employment, (3) by the insured. Significantly, Section A does not use the phrase

---

[1] This case was originally pending before Judge Nathan; I inherited it when Judge Nathan took her seat on the
United States Court of Appeals for the Second Circuit.

"because of" bodily injury; rather, the policy "applies to bodily injury." This carefully chosen language limits the scope of coverage available under an employers' liability policy to what is consistent with Section 1113[a][15] of the N.Y. Insurance Law and what is covered (and is not covered) by a workers' compensation policy.

Because an insurance policy must be read as a whole, giving meaning to every word and clause in the contract, *Raymond Corp v. National Fire Union Ins. Co. of Pittsburgh,* 5 N.Y. 3d 157, 162 (2005), everything in the policy that follows can only be understood in relation to this introductory section of the policy.

   B.   <u>We Will Pay</u>

*We will pay **all sums that you legally must pay as damages because of bodily injury to your employees,** provided the bodily injury is covered by this Employers Liability Insurance.*

*The damages we will pay, **where recovery is permitted by law**, include damages:*

   1. *For which you are liable to a third party by reason of a claim or suit against you by that third party to recover damages claims against such third party as a result of injury to your employee;*

   2. *For care and loss of services;*

   3. *For consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and*

   4. *Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.*

JSOF Ex. 4, at Part Two, Sec B (emphasis added).

The key phrase in Section B of the policy is that the insurer will pay "all sums that you [Western, the employer] must pay as damages because of bodily injury to your (*i.e.*, Western's) employees provided the bodily injury is covered by this Employers Liability Insurance." The first part of that clause limits AZIC's coverage to liability incurred by Western, the injured men's

7

employer, and no one else ("all sums that you legally must pay"); the latter half makes it clear

that the policy is not a general liability policy that offers coverage for personal injury, but only

afford coverage for that fall within the ambit of Employers Liability Insurance, which is a

statutorily defined type of insurance. The list of examples of the types of damages that are

covered by the policy, while non-exhaustive, all relate to compensation for the injury to the

employee or members of his family: on-the-job bodily injury directly suffered by the employee

that is not covered by workers' compensation; bodily injury to a family member of the injured

employee suffered as a direct result of the on-the-job bodily injury suffered by the employee;

loss of care and consortium claims asserted by family members of the injured employee, and

claims by other insurers. None of the listed examples takes the scope of the policy outside the

statutory definition of employers' liability and workers' compensation insurance. Significantly,

Section B expressly limits the payment of damages to those "where recovery is permitted by

law," which implicates the statutory definition as well.

C.  *We Will Defend*

> *We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.*
>
> *We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.*

JSOF Ex. 4, at Part Two, Sec D (emphasis added).

The duty to defend section of the policy by its terms covers only claims, proceedings or

suit against Western "for damages payable by this insurance." Therefore, if it is clear that the

employers' liability policy does not cover the damages sought in a lawsuit, there is no duty to

defend.

III.    **The Complaint in the Underlying Lawsuit**

The parties agree that New York law governs this contractual dispute.

New York courts have consistently held that an insurer's duty to defend turns on whether the allegations contained within the four corners of the underlying complaint are within the scope of risk covered by the policy. *See George Muhlstock & Co. v. American Home Assur. Co.*,117 A.D.2d 117, 122 (1st Dept. 1986) (citing *International Paper Co. v. Continental Cas. Co.*, 35 N.Y.2d 322, 326-327 (N.Y. 1974)). In other words, the insurer's duty to defend is triggered whenever the facts pleaded in the underlying complaint raise a potentially covered claim. *See, e.g.*, *Technicon Elec. Corp. v. American Home Assur. Co.*, 74 N.Y.2d 66, 73 (N.Y. 1989) ("If the . . . complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend") (citation omitted). The court, therefore, must compare the allegations of the Underlying Complaint with the language of the policy, in order to determine whether there is a potentially covered claim. *See Cohen v. Employers Reins. Corp.*,117A.D.2d 435, 438 (1st Dept. 1986).

However, "where the facts alleged plainly do not bring the case within the coverage of the policy, there is no obligation to defend . . ." *George Muhlstock*, 177 A.D.2d at 123 (citing *Lionel Freedman, Inc. v. Glens Falls Ins. Co.*, 27 N.Y.2d 364 (N.Y. 1971), *rearg. den.*, 28 N.Y.2d 859 (N.Y. 1971)). "[A]n insurer can be relieved of its duty to defend if it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision." *Allstate Ins. Co. v. Zuk,* 78 N.Y.2d 41, 45 (N.Y. 1991); *see also Atlantic Mut. Ins. Co. v. Terk Technologies Corp.*, 309 A.D.2d 22, 29 (1st Dept. 2003) (quoting *Northville Indus. Corp. v. National Union Fire Ins. Co. of Pittsburgh,* 89 N.Y.2d 621 (N.Y. 1997)).

9

And so we turn to the allegations of the Underlying Complaint.

In the Underlying Complaint, Gotham and ZDG allege that, on June 25, 2018, Western was using the Jekko mini crane on the fourth floor of the Project to lift one of the façade panels into place. UC ¶ 34. An uncertified ironworker was using the Jekko to lift the panels; the Jekko was not secured with tie offs; and, in violation of NYDOB and applicable safety rules, no engineer or certified Jekko operator had calculated whether the Jekko could lift the weight of panels, which were above the Jekko's load limit. *Id.* ¶¶ 35-36. While lifting the panel, the Jekko fell forward, injuring two Western ironworkers, Christopher Jackson and Jorge Delgado, and causing considerable physical damage to the Project. *Id.* ¶¶ 37-38. The NYDOB issued several violations and stop work orders and ordered the cessation of all activities at the site, effectively stopping all work on the Project and leading to extensive cost overruns and delays. *Id.* ¶¶ 38-41. Specifically, the cost overruns are alleged to have included "costs to repair or replace damaged work, costs to replace Western with another subcontractor to perform Western's scope of work, and costs due to delay and efforts to mitigate delay, and were caused by, *inter alia*, the abrupt cataclysmic occurrences of June 25, 2018, and the resulting personal injury and property damage." *Id.* ¶ 42.

That the accident caused two men to suffer bodily injury is indisputable. But while the Underlying Complaint alleges that bodily injuries occurred, ZDG and Gotham seek no damages to compensate Jackson and Delgado for their injuries, or to reimburse themselves for any monies that may have been paid to the injured men. If there were any doubt on that score (and apparently there is not, because Western has admitted as much, *see supra* p. 3), Gotham's and ZDG's Rule 26(a)(1) damages disclosures make it perfectly clear that the plaintiffs in the Underlying Lawsuit seek no damages attributable to the injuries suffered by Jackson and Delgado. Rather, Gotham

and ZDG seek to recover from Western project-related costs (cost overruns, delay and repairs); payment of NYDOB penalties; legal fees and expenses associated with the resolution of the NYDOB violations and the criminal and civil investigations and proceedings that followed the accident; payment of insurance deductibles, delay analysis, additional rental costs; together with the contract balance that was paid to Western.

## LEGAL STANDARD

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" "if it might affect the outcome of the suit under the governing law." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *Westinghouse Elec. Corp. v. N.Y.C. Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). "Uncertainty as to the true state of any material fact defeats the motion." *U.S. v. One Tintoretto Painting Entitled The Holy Fam. With Saint Catherine & Honored Donor*, 691 F.2d 603, 606 (2d Cir. 1982).

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1). "Courts must construe the evidence and draw all reasonable inferences in the non-moving party's favor." *United Specialty Ins. Co. v. JD Com. Builders Inc.*, No. 18-cv-6735 (CM), 2020 WL 49017661, at *3 (S.D.N.Y. Aug. 20, 2020).

## DISCUSSION

## I.   The Applicable Law

"It is . . . well settled that the obligation of an insurer to defend does not extend to claims which are not covered by the policy or which are expressly excluded from coverage." *30 W. 15th St. Owners Corp. v. Travelers Ins. Co.,* 563 N.Y.S.2d 784, 785 (1st Dept. 1990) (citations omitted). The duty to defend is not triggered "when the only interpretation of the allegations against the insured is that the factual predicate for the claim falls wholly with a policy exclusion." *Yangtze Realty, LLC v. Sirius Amer. Ins. Co*., 90 A.D.3d 744, 744-745 (2d. Dept. 2011) (citations omitted).

In New York, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Morgan Stanley Group Inc. v. New England Ins. Co*., 225 F.3d 270, 275 (2d Cir. 2000) (quoting *Village of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995)). Where there are ambiguities in the language of a policy, they are construed strictly against the insurer. *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 37 N.Y.3d 552, 561, 183 N.E.3d 443, 447 (2021). But when the provisions of a policy are unambiguous and understandable, courts are to enforce them as written. *See Goldberger v. Paul Revere Life Ins. Co*.,165 F.3d 180, 182 (2d Cir. 1999). Whether language in a policy is ambiguous presents a question of law, which can of course be resolved by the court on

a motion for summary judgment. *Law Debenture Trust Co. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir.2010).

New York law further dictates that "The tests to be applied in construing an insurance policy are common speech . . . and the reasonable expectation and purpose of the ordinary businessman." *Ace Wire & Cable Co., Inc. v. Aetna Cas. & Sur. Co.*, 60 N.Y.2d 390, 398 (N.Y.1983). Courts first look to the language of the policy and construe it "in a way that affords a fair meaning to *all of the language employed by the parties in the contract and leaves no provision without force and effect*." *Raymond Corp.*, 5 N.Y.3d at 162 (emphasis added). When a term is not defined, New York courts recognize that the term must be given its plain and ordinary meaning, and that courts should refrain from rewriting the policy. *See Slattery Skanska, Inc. v. American Home Assur. Co.*, 67 A.D.3d 1, 14 (1st Dept. 2009). "Strained and unnatural readings of terms in an insurance policy are frowned upon and cannot be relied on to create ambiguities." *1070 Park Ave. Corp. v. Fireman's Fund Ins. Co.*, 313 F. Supp. 3d 528, 538 (S.D.N.Y. 2018), aff'd, 777 F. App'x 561 (2d Cir. 2019) (internal citation omitted).

Finally as the party seeking coverage, Western carries the initial burden of establishing the possibility of coverage under the AZIC WC/EL Policy. *See Morgan Stanley Group*, 225 F.3d at 276 ("It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss") (citations omitted); *Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 218 (N.Y. 2002) ("Generally, it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage") (citations omitted).

Applying these well-settled principles, it is clear beyond peradventure that the purely economic damages to Western sought in this lawsuit do not fall within the scope of risk covered

13

by the AZIC's employers' liability policy. As a result, AZIC has no duty to defend Western in the Underlying Lawsuit, or to indemnify Western for any of the damages sought therein.

## II.   AZIC Has No Duty to Defend Western in the Underlying Lawsuit

No matter how hard Western tries to make them so, the terms of the policy in suit are not ambiguous. The policy is an employers' liability policy. The scope of risk covered by the policy is limited, in Section A ("How This Insurance Applies"), to Western's liability for bodily injury suffered by a Western employee in the course of employment. Every subsequent provision in the policy must be read in the context of this overarching limitation on coverage. In particular, Section B provides that the insurer agrees to pay only damages "because of bodily injury" to Western's employees that are covered by employers' liability insurance.

The policy also cannot be read without reference to the definition of employers' liability insurance in the state's Insurance Law. Such a policy does not offer general liability coverage, but only covers "legal liability, under common law or statute or assumed by contract, of any employer for the death or disablement of, or injury to, his employee." Insurance Law § 1113[a][15]. Offering gap coverage akin to Workers' Compensation, it covers exactly the same risks as the workers' compensation policy to which it is statutorily – and in this case, physically – attached. No reasonable purchaser of AZIC's policy would assume that the insurer had agreed to answer for damages that were not in the nature of employer compensation for the death or disablement of an employee – the same type of damages covered by a workers' compensation policy.

As required by law, this court must compare the limited form of coverage afforded by this policy with the damages sought in the Underlying Lawsuit. Neither of Western's injured employees is party to the Underlying Lawsuit, and neither Gotham nor ZDG is alleged to have

14

employed the injured men. Neither plaintiff seeks reimbursement in the Underlying Lawsuit for sums they may have paid to compensate the two injured employees, or members of their family who lost their services and/or consortium, or who may have been injured while caring for them. Rather, the Underlying Complaint seeks damages for the additional sums that Gotham and ZDG were required to pay in order to complete the project because of the extensive delays and damage attributable to Western's negligence, gross negligence and breaches of contract, which resulted in both the crane accident and faulty workmanship having nothing to do with the accident. UC ¶¶ 48-72. There is no disputed issue of fact on this point.

Nonetheless, Western argues that at least some of the damages sought by Gotham and ZDG might be attributable to the physical injury suffered by the two workers. It relies on the following language in the complaint:

> As a result of the above described cataclysmic occurrences of June 25, 2018, and the resulting personal injuries and property damage, the DOB issued several violations and stop work orders…effectively stopping all work on the Project.

UC ¶ 39.

Western argues that this language in the Underlying Complaint implicates AZIC's duty to cover "damages *because of* bodily injury to your employees" that applies in **Section B: We Will Pay**. It so argues despite the admitted fact that, this boilerplate language notwithstanding, Gotham and ZDG seek not a dime for damages that "appl[y] to bodily injury" suffered by Western's employees acting in the course of their employment. The proof of the pudding: Damage to premises, the costs associated with delays that were needed to clear up violations, legal fees associated with investigations into how the accident occurred – all would have been incurred if the crane had fallen and, while causing extensive physical damage to the project, injured no one.

This last point is highly significant. Use of the phrase "because of" bodily injury does not mean that coverage is afforded simply because some bodily injury occurred "somewhere in the sequential chain of events leading up to" the claim. *Great Am. Assurance Co. v. PCR Venture of Phoenix LLC,* No. CV-13-00570-PHX-ROS, 2014 WL 11497799, at *4 (D. Ariz. July 30, 2014) (citing *Long Island Lighting Co. v. Hartford Acc. & Indem. Co.*, 350 N.Y.S. 2d 967 (N.Y. Sup. Ct. 1973)). Courts in this state, and in other states construing policies governed by New York law, have consistently recognized that the words "because of," when used in an insurance policy, have a "more circumscribed meaning . . . than merely being a sequential link in the chain of events." *Long Island Lighting Co.*, 350 N.Y.S. 2d 967. Put otherwise, "the policy's 'because of' language requires a stronger causal link than . . . 'arising out of.'" *Cent. Park Studios, Inc. v. Slosberg*, 36 Misc. 3d 1227(A), at *3 (Sup. Ct., N.Y. Co. June 5, 2012).

Since "because of" is not a synonym for "arising out of," a claim seeking reimbursement for purely economic harm cannot be transformed into a claim for "bodily injury" just because someone sustained a bodily injury at some point in the chain of events leading up to the claim. As the court in *Great Am. Assurance Co.* put it:

> The fact that . . . 'bodily injury' lies somewhere in the sequential chain of events leading up to [the underlying plaintiff's] claims does not transform [the driver's] claims for 'economic harm' into claims 'because of bodily injury.'")

*Great Am. Assurance Co*, 2014 WL 11497799, at *4.

While *Great Am. Assurance* does not involve an employer's liability policy, as this case does, the reasoning used to deny coverage in that case is instructive. A driver hit and seriously injured motorcycle passengers while driving a rental car. The passengers sued the driver. The driver believed that he had purchased supplemental liability insurance from the rental car company but discovered he had not. He assigned to the motorcyclists his claim against the rental

car company for misconduct in the handling of the rental car transaction, and the cyclists brought an action against the company. An insurer for the rental car company sought declaratory judgment that it had no duty to defend based on the driver's claims.

The court ruled that Great American had no duty to defend under either of the policies in suit – a CGL policy and a business auto policy – because the damages sought "would exist even if the [motorcycle passengers] had not suffered any bodily injury," *Great Am. Assurance Co*, 2014 WL 11497799, at *4. Both policies covered the rental company for damages "because of bodily injury;" but the court – relying on the premise that "the language of the policy and the nature of the damages sought are paramount" – noted that no one suffered any bodily injury as a result of the company's conduct of the rental transaction and found the policies unambiguous and their coverage inapplicable to the injury actually alleged in the complaint.

So too here. The language of the employer's liability policy here in suit makes it crystal clear that the only damages covered are the same type covered by workers compensation – damages to the insured's injured employees. And the damages sought in this case are not the type of damages covered by the policy. Therefore, AZIC has no duty to defend.

Other cases cited by AZIC also make this point. In *Zurich-American Ins. v. Audivox Corp.*, 294 A.D.2d 194 (1st Dep't 2002), the First Department ruled that insurer-defendants' commercial liability policies did not cover claims asserted in a proposed class action against a cell phone distributor, even though the complaint alleged that cell phones raised the risk of bodily injury to users, because the only damages sought were purely economic damages, consisting of the cost of headphones to "block the allegedly dangerous radiation emitted by cell phones." The reason: the claim for damages alleged in the complaint was not for "damages because of bodily injury;" the plaintiffs disclaimed seeking damages beyond the cost of the

headphones, and that was not an element of "bodily injury" damage. *Id.* The same is true of

Gotham and ZDG here, since they have not alleged any such damages.

Similarly, in *Farm Fam. Cas. Ins. Co. v. Brady Farms, Inc.*, 87 A.D.3d 1324, 1326-27

(4th Dep't 2011), the court concluded that there was no coverage under a Special Farm Package

Policy in suit. The plaintiff sought the equivalent of a workers' compensation award against her

late husband's employer, because of the defendant's failure to insure her decedent with a

workers' compensation policy, as required by law. The plaintiff's decedent was killed in an

accident during the course of his employment, and the Package Policy in suit covered "damages

because of BODILY INJURY or PROPERTY DAMAGE caused by an OCCURRENCE to

which the [coverage in the policy] applies." *Id.* at 1326. The decedent's death plainly was the

result of bodily injury, but the Fourth Department ruled that there was neither coverage nor a

duty to defend because "the liability of defendant to decedent arises from defendant's failure to

meet its statutory insurance procurement obligation rather than from the bodily injury sustained

by decedent." *Id.* at 1326-27. Once again, the fact that someone was injured in an on-the-job

accident did not mandate a duty to defend. *See also, Smith Pontiac-GMC Truck Ctr., Inc. v.*

*Hartford Acc. Indem. Co.,* 194 A.D.2d 906, 908 (3d Dep't 1993); *Morgan Fuel & Heating Co. v.*

*Lexington Ins. Co.*, 106 A.D.3d 706, 707 (2d Dep't 2013).

The duty to defend cannot be triggered by artful pleading or artful interpretation of a

pleading, and the mere fact that a complaint in a lawsuit mentions, or even describes in copious

detail, a bodily injury that occurred as part of a chain of events does not automatically mean that

an insurer has a duty to defend. That duty is triggered only when the damages sought in the

Underlying Lawsuit at least arguably fall within the terms of the insurance policy. In this case,

the policy is unambiguous; it affords coverage only when the damages sought "apply to" an on-

the-job injury suffered by a covered employee. Damages in the nature of "cost overruns," which "included but were not limited to costs to repair or replace damaged work, costs to replace Western with another subcontractor to perform Western's scope of work, and costs due to delay and efforts to mitigate delay," UC ¶ 43, are not damages to which the insurance in suit "applies" because they are not damages for "bodily injury due to accident" that were suffered in the course of anyone's employment. The same is true of damages attributable to "certain portions of the work performed by Western under the Subcontract prior to the termination thereof [that] were defective and required remedial work and/or replacement," which Gotham and ZDG also seek in the Underlying Lawsuit. *Id.* at ¶ 43. As Western concedes in its brief, no item of damages sought by Gotham and ZDG in the Underlying Lawsuit "applies to" the injuries suffered by Jackson or Delgado.

Western violates the first rule of insurance policy constructions – language must be interpreted so as to give meaning to every word in a policy. Western shears the phrase "damages because of bodily injury to your employees," from its overall context – specifically, the limitation on the scope of coverage that is set forth at the outset of the policy in Section A and the statutory definition of employers' liability insurance.

Finally, Western's reliance on *Charles F. Evans Co. v. Zurich Ins. Co.*, 95 N.Y.2d 779, 780 (2000) is misplaced. In that case, the complaint alleged that the insured contractor had become obligated to pay for lost time and workers' compensation claims as a result of slip and fall injuries incurred by its workers due to the plaintiff's allegedly faulty workmanship – specifically, leaks in the roof plaintiff installed, which allowed water to seep in and form puddles on which workers slipped. The New York Court of Appeals concluded, in a brief memorandum order, that Zurich's duty to defend was triggered by these allegations, because the general

liability policy in suit was "at least ambiguous" as to whether the slip and fall claims were covered as an injury suffered "because of" bodily injury. Interestingly, the ambiguity was created, not by the language of the policy, but by the allegations of the complaint, which specifically asserted that the claimed damages (reimbursement for workers' compensation) were attributable to the workers' injuries.

In this case there is no such ambiguity; Western concedes that Gotham and ZDG do not seek any such damages.

Therefore, Western's effort to transform AZIC's employers' liability policy into a general liability policy fails, and AZIC has no duty to defend Western in the Underlying Lawsuit.

## III.   Judge Nathan's Prior Decision Is Not Relevant To the Determination of These Motions

The pending motions are not the first summary judgment motions made in this case. The first-named defendant, Zurich American Insurance Company ("ZAIC"), and its intervening reinsurers, moved for and obtained summary judgment dismissing Western's defense and coverage claims against them. *W. Waterproofing Co., Inc. v. Zurich Am. Ins. Co.*, No. 20-CV-3199 (AJN), 2022 WL 329225, at *13 (S.D.N.Y. Feb. 3, 2022), *reconsideration denied*, No. 20-CV-3199 (AJN), 2022 WL 1501087 (S.D.N.Y. May 11, 2022). Western argues that a decision by The Hon. Alison Nathan construing the CGL policy issued by the other named defendant (ZAIC) both compels a finding that AZIC at least has a duty to defend and constitutes "law of the case." Neither argument holds water.

In the O&O (as I will refer to her decision), Judge Nathan held that ZAIC did not have a duty to defend Western in the Underlying Lawsuit because its CGL Policy – which afforded Western coverage for "bodily injury or property damage" based on an "occurrence" as defined in that policy – did not in fact afford coverage for damages arising out of the crane accident.

However, Judge Nathan did conclude that the hideous accident of June 25, 2018, qualified as an "occurrence" under the ZAIC Policy for several reasons, one of which was that the policy covered losses attributable to "bodily injury." In her opinion, it was at the very least ambiguous whether any of the damages in the Underlying Complaint were the sort of damages that might be covered under the "occurrence" language of the policy. *W. Waterproofing Co.*, 2022 WL 329225, at *9.[2]

Western argues that Judge Nathan's finding about the ambiguity in the Underlying Complaint is "law of the case" and compels the court to find in its favor. That is manifestly not correct, for three reasons.

First and foremost, Judge Nathan's finding is not law of the case because it falls outside the ambit of that doctrine. A decision made at a previous stage of litigation becomes law of the case only if it could have been challenged in the ensuing appeal but was not. *United States v. Ben Zvi,* 242 F. 3d 89, 96 (2d Cir. 2001). Interlocutory appeals are disfavored in federal courts (as opposed to New York State cases, when they are routine); and Judge Nathan denied a motion by Western for certification to take an interlocutory appeal from the O&O. Dkt. No. 262. Ergo, her decision could still be the subject of an appeal once final judgment is entered in this matter. For that reason alone, it is not law of the case.

Second, nothing in the O&O is law of the case as to the scope of coverage of AZIC's employers' liability policy, because Judge Nathan made it quite clear that she was not construing the AZIC Policy at issue here. *W. Waterproofing Co.*, 2022 WL 329225, at *12 (" . . . coverage decisions made by American Zurich Insurance Company under the Zurich WC/EL

---

[2]   Western's concession that Gotham and ZDG seek only purely economic damages in the Underlying Lawsuit was actually made in connection with ZAIC's motion, and was not withdrawn when this motion was filed. In my view, that means the complaint unambiguously does not seek damages that fall within the scope of the AZIC employer's liability policy.

Policy . . . [are] not at issue here."). She construed an entirely different policy, a CGL policy issued by a different insurer (ZAIC) covering entirely different risks. Judge Nathan found that the Underlying Complaint was "at the very least ambiguous" about whether Gotham and ZDG were seeking damages that, even though purely economic, might possibly be attributable to a "bodily injury" that was covered by the CGL. But she made no finding about whether the Underlying Complaint filed by Gotham and ZDG could be construed to seek damages for Western's liability for injuries suffered by its workers in the course of their employment – damages that Western has conceded are not sought in the Underlying Lawsuit. To the contrary: Judge Nathan observed that the Employer Liability exclusion in ZAIC's CGL Policy (the policy she was construing) was consistent with the basic principle that, "A commercial general liability policy is not designed to provide coverage for an employer's liability for injuries to its employees." *Id.* at *13 (citing 9A *Couch on Insurance* § 129:11 (3d ed. 2014)).

Finally even if Judge Nathan's decision could be read as holding that the Underlying Complaint sought damages arguably covered by the AZIC policy (and as Judge Nathan emphatically denied that she did so, this is an impossible hypothetical), the law of the case doctrine is purely discretionary. It does not limit a district court's power to reconsider its own decisions prior to entry of a final judgment. *Virgin Atlantic Airways, ltd. v. National Mediation Board,* 956 F. 2d 1245 (2d Cir. 1992). This court would not choose to apply the doctrine here.

## IV.    No Duty To Defend Means No Duty to Indemnify

Where an insurer is found to have no duty to defend, the insurer is also entitled to a declaratory judgment that it has no duty to indemnify, as the duty to defend is broader than the duty to indemnify. *See, e.g.*, *City of Niagara Falls v. Merchants Ins. Group*, 34 A.D. 3d 1263, 1264-1265 (4th Dept. 2006) (holding that insurer was relieved of its duty to indemnify in

underlying action when it was relieved of its duty to defend); *C&S Franklin Realty Corp. v. United States Liab. Ins. Co. and Blvd. Bar & Lounge*, 2020 N.Y. Misc. LEXIS 7647, *10 (N.Y. Sup. Ct., Aug. 28, 2020) ("A finding by the court that an insurer is entitled to summary judgment and has no duty to defend, automatically means there is no duty to indemnify") (citing *Frontier Insulation Contrs. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 178 (N.Y. 1997)). For this reason, AZIC's motion for summary judgment dismissing the claims against it in their entirety must be granted.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED. Plaintiff's partial motion for summary judgment is DENIED.

The Clerk of Court is respectfully directed to remove Dkt. Nos. 334 and 352 from this court's list of open motions.

I believe that, between Judge Nathan and myself, we have disposed of all the claims in suit. The parties have five business days to alert me if I am incorrect about that. If I am not, then I will direct the Clerk of Court to enter judgment dismissing this case, and to close the file.

Dated: August 1, 2023

U.S.D.J

BY ECF TO ALL COUNSEL