UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

WESTERN WATERPROOFING COMPANY,
INC. D/B/A WESTERN SPECIALTY
CONTRACTORS,

                Plaintiff,

      v.

ZURICH AMERICAN INSURANCE COMPANY,
ALLIED WORLD SPECIALTY INSURANCE
COMPANY, BDG GOTHAM RESIDENTIAL,
LLC, ZDG, LLC, and AMERICAN ZURICH
INSURANCE COMPANY,

                Defendants,

        and

STARR INDEMNITY & LIABILITY COMPANY,
NAVIGATORS INSURANCE COMPANY,
PHILADELPHIA INDEMNITY INSURANCE
COMPANY, MARKEL AMERICAN
INSURANCE COMPANY, and BERKLEY
INSURANCE COMPANY,

                Intervening Defendants.
_____x

BDG GOTHAM RESIDENTIAL, LLC
and ZDG, LLC,

                Counterclaim Plaintiffs,

      v.

WESTERN WATERPROOFING COMPANY,
INC. D/B/A WESTERN SPECIALTY
CONTRACTORS,

                Counterclaim Defendant.
_____x

No. 20-cv-3199 (CM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11 / 1 / 2023

## MEMORANDUM DECISION AND ORDER

McMahon, J.:

This lawsuit originated as a coverage action arising out of a construction accident that occurred in June 2018 in Manhattan, in which two ironworkers were grievously injured.

In an order dated February 3, 2022, (Dkt. No. 210), my colleague, the Hon. Alison Nathan, concluded as follows: Zurich American Insurance Company ("Zurich") and Allied World Assurance Company ("AWAC") were not liable to defend or indemnify Western Waterproofing Company, Inc. d/b/a Western Specialty Contractors ("Western") under the policies sued on in the so-called Damages and Delay Action, and the Intervening Defendants – all of which are reinsurers of Zurich – were perforce also not liable under their policies.

In an order dated August 1, 2023, (Dkt. No. 388), this Court found that American Zurich Insurance Company ("AZIC") was not liable to defend or indemnify Western under its policy, which was an employer liability and workers' compensation policy (the "WC/EL Policy"), not a general liability policy.

So what is left of this coverage action?

Not much, one would think.

Western has asserted claims under a builder's risk policy against Allied World Specialty Insurance Company ("AWSIC"), and no motion was made to dismiss those claims (a breach of contract claim against AWSIC and a declaratory judgment as to whether AWSIC is obligated to pay the claims of Gotham and ZDG in the Damages and Delay Action). They should be ready for trial soon if they are not ready now.[1] But otherwise none of the insurer defendants is liable for any

---

[1] I see that there are or recently were discovery disputes pending before Magistrate Judge Moses in connection with Western's claims against AWSIC. They had best be resolved soon, because I hope to try this case in the first quarter of 2024.

damages that may be assessed against Western – or its indemnitees, Gotham and ZDG – in the Damages and Delay Action.

However, there is collateral litigation that has been brought under the umbrella of this limited coverage dispute. It has given rise to "cross claims" and counterclaims that must be disposed of. Specifically, the Court must address a motion by the Excess Insurers to dismiss "cross claims" asserted against them by Gotham and ZDG, and a motion by Western to dismiss counterclaims asserted against it by Gotham and ZDG.

## BACKGROUND

The underlying facts of this case are comprehensively set forth in the February 2022 opinion and order of my colleague Judge Nathan, from whom I inherited this case, *see Western Waterproofing Company, Inc. v. Zurich American Insurance Company*, No. 20-cv-3199, 2022 WL 329225 (S.D.N.Y. Feb. 3, 2022), and in my August 2023 opinion and order granting AZIC's motion for partial summary judgment. (*See* Dkt. No. 388.) I will not repeat them here.

I do, however, wish to acquaint the reader with the existence of the following lawsuits, which play into the motions herein decided:

1. **The Personal Injury Actions**. There are two personal injury actions pending in the New York State Supreme Court (the "Personal Injury Actions"). *See Juanita Jackson, as Guardian of Christopher Jackson, an Incapacitated Person v. BDG Gotham Residential, LLC and ZDG, LLC*, Index No. 153339/2019 (N.Y. Sup. Ct. New York Cnty.); *Jorge Delgado and Yahaira Delgado v. BDG Gotham Residential, LLC and ZDG, LLC*, Index No. 28195/2018E (N.Y. Sup. Ct. Bronx Cnty.). These lawsuits were brought against Gotham and ZDG by the two construction workers (Jackson and Delgado) who were seriously injured in the accident that underlies all this litigation. Summary judgment has been granted against defendants in both actions on the issue of

liability. Western, the subcontractor for whom the two men were working, could not be sued by the two plaintiffs, because Western's direct liability to Jackson and Delgado is limited to workers' compensation. But Western could be sued – and was sued – in the Personal Injury Actions by Gotham and ZDG, which argued that, if they were liable to the construction workers, Western was liable to them. Those third-party claims for indemnification and contribution were quite properly asserted in the Personal Injury Actions, where they should be, but are not, presently pending.

2.    **The Damages and Delay Action**. There is a lawsuit (known colloquially as the "Damages and Delay Action") that was brought on June 4, 2019, by Gotham and ZDG against Western and its surety, Western Surety Company, in the New York State Supreme Court. That action, which seeks reimbursement for project cost overruns, property damage and construction delays, was removed to this Court. *See BDG Gotham Residential, LLC et al. v. Western Waterproofing Co., Inc. d/b/a Western Specialty Contractors, et al.*, No. 1:19-cv-6386 (CM). In the Amended Complaint in the Damages and Delay Action, Gotham and ZDG assert claims against Western and Western Surety for breach of contract, negligence and gross negligence. They seek damages for these construction-related losses of more than $37 million. (*See id.* at Dkt. No. 29, at ¶¶ 47-92.)

3.    **The Damages and Delay Coverage Action**. This action (the instant lawsuit) was brought by Western against its various insurers – its general liability insurers (Zurich and the Excess Insurer Intervenors[2]), its builder's risk insurer (Allied World Specialty Insurance Company) and its employer liability and workers' compensation insurer (American Zurich Insurance Company) – seeking a declaration that Western was covered for damages that might be

---

[2] Starr Indemnity & Liability Company, Navigators Insurance Company, Philadelphia Indemnity Insurance Company, Markel American Insurance Company, and Berkley Insurance Company (together, the "Excess Insurers").

assessed against it in the Damages and Delay Action. The case was brought in the New York State Supreme Court and was removed to this Court on the basis of diversity. Nothing in Western's coverage action addressed any insurer's liability in the Personal Injury Actions (where Western, shielded by Workers Comp, is not a defendant). Nonetheless, Gotham and ZDG discontinued their claims for indemnification and contribution in the Personal Injury Actions and brought counterclaims in Western's coverage action for indemnification and contribution as to the Personal Injury Actions – allegedly because to do otherwise would constitute splitting causes of action.

4.   **The Anti-Subrogation Action**. Finally, on November 16, 2020, the Excess Insurers commenced an action against Zurich in the Commercial Division of the Supreme Court of the State of New York, County of New York, seeking a declaration that Zurich had directed Gotham and ZDG to discontinue its third party claims in the Personal Injury Actions (the very claims that are now pending in this Coverage Action) in bad faith. *Starr Indemnity & Liability Company, et al. v Zurich American Insurance Company*, Index No. 656346/2020 (N.Y. Sup. Ct. New York Cnty.). The Excess Insurers argued that Zurich directed the discontinuance of the Third-Party Action in order to shift liability for any judgment or settlement in the Personal Injury Actions from the unlimited AZIC WC/EL Policy to the Zurich general liability policy (the "Zurich GL Policy") – which caps Zurich's indemnification obligations at $2 million, and so could implicate the Excess Insurers' policies.

Gotham and ZDG filed motions to intervene, which were granted on July 8, 2021.

Zurich filed two counterclaims in the Excess Insurers' lawsuit: the first seeking a declaration that ZDG, Gotham and Western are all insureds under the Zurich GL Policy and the Excess Insurers' policies, and the second seeking a declaration that "a third party claim for contribution and indemnity against Western on behalf of Zurich, Gotham and/or ZDG would be

barred by the anti-subrogation rule." (*See id.* at Dkt. No. 5.) For this reason, the lawsuit is known colloquially as the "Anti-Subrogation Action."

The parties cross moved for summary judgment on the issue of whether the anti-subrogation rule barred Zurich, Gotham and ZDG from asserting claims for contribution and indemnification against Western, because they were all insureds under the same policy. On May 10, 2022, Justice Engoron of the New York State Supreme Court held that "a third-party claim for contribution, common law and contractual indemnity against [Western] on behalf of [Zurich, Gotham and/or ZDG] is barred by the antisubrogation rule." *Starr Indem. and Liability Co. v. Zurich American Ins. Co.*, No. 656346/2020, 2022 WL 1488842, at *7 (N.Y. Sup. Ct. May 10, 2022). Justice Engoron's ruling was unanimously affirmed by the Appellate Division: First Department. *Starr Indem. & Liab. Co. v. Zurich Am. Ins. Co.*, 212 A.D.3d 420, 421 (1st Dep't 2023).

### Facts Pertinent to the Motion to Dismiss Gotham's and ZDG's Cross Claims

On November 8, 2021, Gotham and ZDG filed a pleading styled "Notice of Cross Claim" against the Excess Insurers, which had intervened in this action.[3] The Federal Rules of Civil Procedure provide for no such pleading; a party is expected to assert cross claims in its answer.

In this unorthodox document, Gotham and ZDG asserted two unorthodox claims.

First, Gotham and ZDG sought a declaration that they had not breached their duty to cooperate with and assist the Excess Insurers in their defense of the actions brought in the New York State Supreme Court by "refusing to risk splitting their claim and pursue the contribution and indemnity claims against Western in state court." (**Crossclaim I**). (*See* Dkt. No. 173, p. 13, ¶ 58.) Put otherwise, they brought what appears to be their defense, or perhaps a compulsory

---

[3] Berkley had not yet filed its motion to intervene but did so eventually.

counterclaim, in the Anti-Subrogation Action – a declaration that they did not act in bad faith by discontinuing their cross claims in the Personal Injury Actions and refiling them here – before this Court.

Second, they sought a declaration that the Excess Insurers breached their duties to Gotham and ZDG "by threatening to preclude coverage unless Gotham and ZDG comply with the Excess Insurers' demands to re-file the contribution and indemnity claims against Western in state court." (**Crossclaim II**). (*Id.,* p. 14, ¶ 64.)

The Excess Insurers have moved to dismiss these crossclaims, on the grounds that they were improperly asserted and the Court lacks subject matter jurisdiction over them. Gotham and ZDG consented to a stay of discovery on the crossclaims against the Excess Insurers pending adjudication of the motion to dismiss. (*See* Dkt. No. 278.)

On August 2, 2022, the Court placed the Excess Insurers' motion to dismiss on its suspense calendar pending the First Department's adjudication of the Excess Insurers' appeal of Justice Engoron's May 10, 2022, decision in the Anti-Subrogation Action. (*See* Dkt. No. 298.) After the First Department unanimously affirmed Judge Engoron's decision, this Court lifted the stay on Excess Insurers' motion to dismiss Gotham and ZDG's crossclaims, which were asserted in the Coverage Action and are now ripe for adjudication. So is Western's motion to dismiss Gotham and ZDG's counterclaims, also asserted in the Coverage Action. (*See* Dkt. No. 399.)

### Facts Pertinent to the Motion to Dismiss Gotham's and ZDG's Counterclaims

Gotham and ZDG have also asserted counterclaims against Western in this Coverage Action for contractual indemnification (**Counterclaim I**), common-law indemnification (**Counterclaim II**), and common-law contribution (**Counterclaim III**). Gotham and ZDG's fourth "counterclaim" requesting a declaratory judgment is not a claim; it is a request for relief. (*See* Dkt.

No. 92.) Although the Coverage Action had nothing whatever to do with coverage in the Personal Injury Actions – it related solely to coverage in the Damages and Delay Action – these counterclaims relate to coverage for the Personal Injury Actions. The answer does not reveal whether they were asserted as compulsory or permissive counterclaims, but all of the claims for coverage in all cases ultimately arise out of the same incident – the accident that took place on June 25, 2018 at 158 East 126th Street – and Western has not moved to dismiss them as improperly interposed.

That said, Gotham and ZDG's counterclaims were not originally asserted in this lawsuit. Gotham and ZDG originally brought them in the New York State Supreme Court in the Personal Injury Actions. On August 11, 2020, Gotham and ZDG discontinued their coverage claims relating to the Personal Injury Actions without prejudice and shortly thereafter interposed them in this Court. The Excess Insurers argue that these claims were properly brought in the New York State Supreme Court and should have remained there (*see* Dkt. No. 195); that certainly would have made it easier to settle the Personal Injury Actions, since disputes over the money would be pending in the courts that are considering the personal injury claims. The Excess Insurers' position is that Gotham and ZDG should discontinue the counterclaims in this action and reassert them in the Personal Injury Actions, where they were originally filed.

This argument would make more sense if they had asserted these claims in the Damages and Delay Action (since the claims are still "split" into two separate lawsuits, albeit both pending in federal court). But Gotham and ZDG appear to think that New York's rule against splitting causes of action requires them to assert all their coverage-related claims in a single "coverage" action covering all extant coverage disputes relating to coverage, regardless of whether that is coverage for personal injury to the unfortunate workers or the developer's and builder's economic

losses. And, of course, the Excess Insurers are not parties to the Damages and Delay Action –
where joining them as Defendants would destroy diversity.

So here we are.

## DECISIONS

### 1.   Western's Motion to Dismiss Gotham's and ZDG's Counterclaims is Granted

Western moves under Fed. R. Civ. P. 12(c) to dismiss the counterclaims on the ground of
collateral estoppel.

In the Anti-Subrogation Action in the New York State Supreme Court, Justice Engoron
and the Appellate Division: First Department (the "State Court Decisions") ruled that those very
claims – "a third-party claim for contribution, common law and contractual indemnity against
[Western] on behalf of [Zurich, Gotham and/or ZDG]" – were barred by the antisubrogation rule.
*Starr Indem.*, 2022 WL 1488842, at *7.  If the claim is barred in the New York State Supreme
Court as a matter of New York law, then it cannot be litigated here either.

The Excess Insurers oppose Western's motion, arguing, *inter alia*, that since "the decision
in the State Court Coverage Action involved a pure question of law . . . the doctrine of collateral
estoppel does not bar Gotham and ZDG from litigating the amended counterclaims in this action."
(Dkt. No. 376, at 11.) Western does not dispute that the State Court Decisions turned on a pure
question of law, but counters that the doctrine of collateral estoppel bars questions of law as well
as fact, such that collateral estoppel still applies. (Dkt. No. 384, at 7-8.)

### A.    Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed – but
early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ.
P. 12(c). On a 12(c) motion, the court considers "the complaint, the answer, any written

documents attached to them, and any matter of which the court can take judicial notice for the

factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC.*, 647 F.3d 419, 429 (2d Cir.

2011). Motions under Rule 12(c) are subject to the same analysis as motions to dismiss under

Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (citing *Karedes v.*

*Ackerley Group, Inc.*, 423 F.3d 107, 113 (2d Cir. 2005)). Dismissal under Rule 12(c) "is

appropriate where material facts are undisputed and where a judgment on the merits is possible

merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842

F.2d 639, 642 (2d Cir. 1988).

**B.      New York State Preclusion Law Does Not Bar Relitigation of Pure Questions of
Law, So It Does Not Bar the Assertion of the Counterclaims Here**

The parties have argued this motion on issue preclusion/former adjudication grounds.

That is certainly understandable. In fact, we stayed adjudication of the counterclaims pending a

decision by the Appellate Division precisely because the very issues raised by the counterclaims

– which sound in contractual and common law indemnification and contribution – were being

decided in the state courts.

Those issues have been decided. Justice Engoron found, and the Appellate Division

affirmed, that Western, ZDG and Gotham were all insureds under the same policies. He thus

held, and the Appellate Division affirmed, that New York State's anti-subrogation rule – a rule

of New York law – barred ZDG and Gotham (and Zurich) from asserting claims for

indemnification and contribution against Western. There was no as of right appeal to the New

York Court of Appeals from the Appellate Division's unanimous decision, and it does not appear

that New York's high court accepted the case on certiorari. One would think that was the end of

the matter. And indeed, were the claims for indemnification and contribution pending in the New

York State Supreme Court, they would be dismissed forthwith.

But the Excess Insurers argue that the preclusive effect of a New York State court judgment does not extend to rulings on pure questions of law, which is what was done by Justice Engeron and the Appellate Division.

The Excess Insurers are correct that a federal court sitting in diversity must apply preclusion laws of the rendering state, not federal law, when determining the preclusive effect of a state court judgment. *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000) (*citing Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). This means that New York law determines the judgment's preclusive effect. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) ("We apply . . . New York law in determining the preclusive effect of a New York State court judgment.").[4]

Under New York law, a former judgment has no preclusive effect on a pure question of law. *Plymouth Ventures II, L.P., v. GTR Source, LLC*, 988 F. 3d 634 (2d Cir. 2021) (*citing Am. Home Assurance Co. v. Int'l Ins. Co.*, 90 N.Y.2d 433, 440 (1997*); see also 11th St. Assoc. LLC v. City of New York*, 139 A.D.3d 532, 533 (1st Dep't 2016). Federal preclusion law is of course otherwise, but federal preclusion law is not applied by a court sitting in diversity.

The parties agree that the State Court Decisions turned on a pure question of law. As Judge Engeron helpfully stated: "The central issue in these motions for partial summary judgment, then, is whether [the Zurich GL Policy] covers Western for the same risk as it covers ZDG and Gotham, such that the antisubrogation rule applies." *Starr Indem.*, 2022 WL 1488842, at *5. In order to determine this issue, Judge Engeron interpreted the Zurich GL Policy and its relevant liability exclusions, *see id.* at *2-3, 6-7, and the First Department did likewise. *See Starr*

---

[4] The parties do not discuss whether the fact that these counterclaims were originally brought in the New York State Supreme Court, but were voluntarily discontinued so that they could be brought here, has any impact on the choice of law discussion.

*Indem. & Liab. Co. v. Zurich Am. Ins. Co.*, 212 A.D.3d 420, 421 (1st Dep't 2023). Under New

York law, the interpretation of unambiguous provisions of an insurance policy presents a

question of law, not of fact. *Preferred Constr., Inc. v. Ill. Nat'l Ins. Co.*, 494 F. App'x 162, 164

(2d Cir. 2012) (*citing Vigilant Ins. Co. v. Bear Stearns Cos.*, 10 N.Y.3d 170, 177 (2008)).

Because the State Court Decisions' application of the anti-subrogation rule turned on the

interpretation of the unambiguous provisions of the Zurich Primary Policy, Justice Engoron and

the Appellate Division were indisputably deciding a question of law. *See Starr Indem*, 2022 WL

1488842, at *6-7; *Starr Indem.*, 212 A.D.3d at 421. Thus, applying New York's preclusion law,

Gotham and ZDG are not barred from asserting these counterclaims.[5] So we cannot rely on

former adjudication principles to get rid of these counterclaims.

But that does not mean this Court cannot enter judgment on the pleadings dismissing

them. Because I, like Justice Engoron, conclude that they are barred by New York law.

### C. On the Merits, the Counterclaims Must Be Dismissed

The terms of the insurance policies are before the Court on a 12(c) motion, because both

Western's original claims and the counterclaims for contractual indemnity rely on the policies, so

they are necessarily pleaded and the entire document can be considered by the Court on a 12(b)(6)

or a 12(c) motion. *See L-7 Designs,* 647 F.3d at 421; *see also Chambers v. Time Warner, Inc.*, 282

F.3d 147, 153 (2d Cir.2002)). Western, Gotham and ZDG are all insureds under the Zurich GL

Policy. ZDG also has a subcontract agreement (the "Subcontract") with Western, which requires

---

[5] Moreover the Rooker-Feldman doctrine, which was once thought to deprive a federal court of subject matter jurisdiction over this sort of relitigation by a loser in a state court – and make no mistake, litigating the counterclaims in this Court is without question an attack on the state court judgment – does not apply, since the counterclaims were asserted in this Court prior to the entry of the state court judgment in the Anti-Subrogation Action. *See Plymouth Ventures, supra,* 988 F.3d at 641 (*citing Hoblock v. Albany County Board of Elections*, 422 F. 3d 77, 85 (2d Cir. 2005)).

Western to indemnify and defend ZDG and Gotham. The Zurich GL coverage includes liability for damages assumed in an "insured contract", *e.g.*, the Subcontract. Thus, contractual indemnification claims under the Subcontract are covered by the Zurich GL Policy. Because there is no ambiguity about this, the Court interprets the policies as a matter of law.

Under New York law, the equitable doctrine of subrogation "entitles an insurer to stand in the shoes of its insured to seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse." *N. Star Reins. Corp. v. Cont'l Ins. Co.*, 82 N.Y.2d 281, 294 (1993). "An insurer, however, has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered." *Id.* The "essential element of the antisubrogation rule is that the party to which the insurer seeks to subrogate is covered by the relevant insurance policy." *Millennium Holdings LLC v Glidden, Co.*, 27 NY3d 406, 416 (2016).

Because Western, ZDG and Gotham are all insured under the Zurich GL Policy, the relevant inquiry becomes whether these counterclaims "aris[e] from the very risk" for which the parties are covered under the Zurich GL Policy. ZDG and Gotham's counterclaim for contractual indemnification for damages in the Personal Injury Actions is made pursuant to the Subcontract, which is covered under the Zurich GL Policy.  Pursuant to that same policy, Zurich has been covering Gotham and ZDG in the Personal Injury Actions. Thus, ZDG and Gotham's contractual indemnification counterclaim is barred by the anti-subrogation rule.

The anti-subrogation rule also bars the remaining common law claims for indemnity and contribution. The Second Circuit's analysis in a non-precedential decision, *Ohio Cas. Ins. Co. v. Transcontinental Ins. Co.*, 372 F. App'x 107 (2d Cir. 2010), is instructive. The Second Circuit acknowledged that Ohio Casualty, as carrier for a general liability umbrella policy, insured a contractor for contractual indemnity claims but not common-law indemnity claims. *Id.* at 111. The

court nevertheless applied the anti-subrogation doctrine as a complete bar, on the basis that the claims against the contractor also included a claim for contractual indemnification, which *was* covered by the general liability umbrella policy. *Id.* at 111-112. The court reasoned that the anti-subrogation rule prohibited Ohio Casualty from pursuing the litigation as though the contractual claims between its two insureds did not exist. *Id.* at 112; *see also Ace Am. Ins. Co. v. Am. Guarantee & Liab. Ins. Co.*, 257 F. Supp. 3d 596 (S.D.N.Y. 2017) (applying *Ohio*'s reasoning to similar facts). This application of the anti-subrogation rule also makes sense under the parties' current insurance scheme. AZIC is currently defending Western on these common law counterclaims, while Zurich is doing so on the contractual counterclaim. Absent the anti-subrogation rule's complete bar, Zurich "could fashion the litigation so as to minimize its liability," since, by failing to assert a contractual indemnification claim, Zurich would avoid coverage and pass off its liability to other insurance carriers, such as AZIC. *See Ohio Casualty*, 372 F. App'x at 111.

ZDG and Gotham argue that the anti-subrogation rule does not apply since they are asserting claims in their own right against Western, rather than on behalf of an insurance carrier, *e.g.*, Zurich. However, ZDG and Gotham's counterclaims are for liability and damages in the Personal Injury Actions. ZDG and Gotham are being defended in those actions under a tower of general liability with multiple insurers and policies, one of which is the Zurich GL Policy. ZDG and Gotham do not dispute that they are insureds, but rather vaguely reference the prospect that one or more of the insurers may eventually deny them coverage in the Personal Injury Actions for damages that have not even been assessed. The Court is not swayed by this empty distinction. This is an insurance dispute and the doctrine and reasoning of subrogation rights still apply. ZDG and Gotham cannot simply drop Zurich's name from the cause of action to do an end run around the

anti-subrogation rule. Such a maneuver violates the very reasoning underlying the doctrine of anti-subrogation, *i.e.*, to "prevent the insurer from passing the incidence of loss to its own insured and to guard against the potential for conflict of interest that may affect the insurer's incentive to provide a vigorous defense for its insured." *N. Star*, 82 N.Y.2d at 294-295.

### D. The Parties' Supplemental Arguments Are Unconvincing

On October 4, 2023, the Court informed the parties that it was on the verge of dismissing these counterclaims and instructed the parties to brief any argument that would bar the Court from doing so. (Dkt. No. 403.) In this order, the Court made clear that the parties should not discuss any issues of former adjudication. Rather than follow the Court's instructions, Starr and Navigator chose to brief and reargue their position that Gotham, ZDG, and Western do not have common coverage under the excess policies. They argue that the excess policies define the insureds covered therein differently than the Zurich GL Policy. Judge Engeron has already decided this issue, and the Court will not revisit it.

Finally, in their supplemental briefing, Gotham and ZDG argue that if the Court decides to dismiss the counterclaims, it should dismiss only claims and damages asserted against Western for which an insurer has already made payment. There is no such limitation on the anti-subrogation rule, and the Court declines to impose one.

### 2. The Cross Claims Are Dismissed Without Prejudice

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *See* Fed. R. Civ. P. 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996). Where a case is not ripe for review, it is

properly dismissed for lack of subject matter jurisdiction. *See BT Holdings, LLC v. Village of Chester*, No. 15-cv-1986, 2016 WL 796866, at *3 (S.D.N.Y. Feb. 23, 2016).

In reviewing whether it has subject matter jurisdiction, this Court assumes the facts in the pleading are true, unless contradicted by "more specific allegations or documentary evidence." *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may refer to evidence outside the pleadings. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

### A. The Excess Insurers Are Correct that the "Cross Claims" Are Asserted in a Procedurally Improper Manner

The Excess Insurers first argue that Gotham and ZDG's crossclaims should be dismissed because they are procedurally improper. The Excess Insurers point out that the crossclaims were filed as a separate pleading nearly a year after Gotham and ZDG filed their answer and long after the time for amending their answer as a matter of right had passed. *See* Fed. R. Civ. P. 7(a). They note that Gotham and ZDG did not move for leave to amend their responsive pleading in order to assert their cross claims.

The Excess Insurers are correct that, under the Federal Rules of Civil Procedure, there is no separate pleading known as a crossclaim. Crossclaims belong in the answer. As this Court explained previously in *Rollins v. Green*, No. 06-cv-3351(CM), 2007 WL 2186895 (S.D.N.Y. July 26, 2007), "The addition of a cross claim is, technically, an amendment to an answer, since cross-claims are supposed to be asserted in the answer." *Id.* at *7; *see also* Fed. R. Civ. P. 7(a) ("Only these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; and (7) if the court orders one, a reply to an answer."); Fed. R. Civ. P. 13(g) ("A

*pleading* may state as a crossclaim any claim by one party against a coparty if the claim arises out

of the transaction or occurrence that is the subject matter of the original action or of a counterclaim,

or if the claim relates to any property that is the subject matter of the original action . . .") (emphasis

added). Here, as in *Rollins*, "as a technical matter, [BDG and Gotham] were required to obtain

permission of the court [pursuant to Fed. R. Civ. P. 15(a)(2)] before filing their cross-claim." *See*

*Rollins*, 2007 WL 2186895, at *7. And so the Court is presented with the same question it was

presented with in *Rollins*: "whether I will dismiss the cross-claim on that ground or give leave of

court now." *Id.*

### B. The Cross Claims Are Dismissed Without Prejudice, Not Because They Were Improperly Pleaded, But Because the Court Lacks Jurisdiction Over Them

While not conceding that their crossclaims are procedurally improper, Gotham and ZDG

ask that the Court retroactively grant leave to amend if I should conclude that they are. Such leave

"shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Anderson News,*

*L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

The Excess Insurers urge the Court to dismiss the "cross claims" instead, because it lacks

subject matter jurisdiction over the "cross claims."

Under the liberal standard for allowing amendment to a pleading, it should be granted if

(1) the party seeking the amendment has not unduly delayed, (2) that party is not acting in bad

faith or with a dilatory motive, (3) the opposing party will not be unduly prejudiced by the

amendment, and (4) amendment would not be futile. *See Foman v. Davis*, 371 U.S. 178, 182

(1962). The moving party "must explain any delay" but the party opposing the amendment bears

the burden of showing bad faith, prejudice, or futility. *See United States ex rel. Raffington v. Bon*

*Secours Health Sys., Inc.*, 285 F.Supp.3d 759, 766 (S.D.N.Y. 2018) (collecting cases).

I need not discuss such issues as bad faith (a much-disputed proposition) or dilatory motive

in order to deny the motion, because amendment would be futile – the Court lacks subject matter jurisdiction over these crossclaims.

The crossclaims are asserted under the Declaratory Judgment Act, 28 U.S.C. § 2201. However, that does not mean that they arise under the Constitution and laws of the United States. Contrary to the suggestion in the brief filed by Gotham and ZDG, the Declaratory Judgment Act does *not* confer subject matter jurisdiction over a claim. *See Warner-Jenkinson Co. v. Allied Chem. Corp.*, 567 F.2d 184, 186 (2d Cir. 1977). To assess whether federal subject matter jurisdiction exists, we must consider the nature of the underlying claims themselves.

In this case, the claims sound in breach of contract. Breach of contract claims do not arise under federal law. And there is not complete diversity among the parties to the crossclaims, as Gotham, ZDG and the Excess Insurers are all citizens of, *inter alia*, New York, New Jersey and Delaware.

However, Gotham and ZDG allege that the Court has supplemental jurisdiction over the cross-claims pursuant to 28 U.S.C. § 1367. "Federal courts have supplemental jurisdiction over cross-claims between non-diverse co-parties under 28 U.S.C. § 1367(a)." *Burrell-Hamilton v. Oden*, No. 17-cv-2634, 2020 WL 1271366, at *2 (S.D.N.Y. Mar. 16, 2020) (collecting cases); *see also Hammond v. Toy Indus. Ass'n, Inc.*, 8 F. Supp. 3d 484, 488 (S.D.N.Y. 2014) ("With respect to the cross-claims . . . the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) wherever diversity jurisdiction does not exist."). The Court can exercise supplemental jurisdiction regardless of fact the cross-claim parties are nondiverse from each other as long as the other requirements of 28 U.S.C. § 1367(a) are met, *i.e.*, it is part of the same case and controversy.

But the Court's supplemental jurisdiction only extends to claims that "are so related to claims in the action within such original jurisdiction that they form a part of the same case or

controversy." 28 U.S.C. § 1367(a). Gotham and ZDG argue that the coverage claims they assert against the Excess Insurers form part of the same case or controversy because "all of the claims relate to who will foot the bill for damages flowing from a construction accident. All of the various insurers present different theories for why they should not provide coverage for the various damages, and resolution will require – and already has to some degree – interpretation of the same policies." (Opp., at 14).

The Excess Insurers argue that the crossclaims are not related because "the crossclaims concern coverage for the Personal Injury Actions . . . while Western's claims in this action concern coverage for the [Damages and Delay Action]." (Reply, at 4).

I agree with the Excess Insurers that this is not a case in which supplemental jurisdiction exists. The claims brought by Western in this action relate to (1) whether any or all of Zurich (and its excess insurers), Allied and/or AZIC has a duty to defend and indemnity the claims asserted against Western in the Damages and Delay Action; and (2) whether Gotham and ZDG have breached their contractual duty to Western by failing to seek coverage for any damages they may be forced to pay as a result of that action under either Allied's builder's risk policy or AZIC's liability policy.[6] The claims in suit have nothing whatever to do with anyone's obligations to pay damages in the Personal Injury Actions. While it is true that, in the final analysis, all of the claims relate to who is going to pay for the damage caused by this terrible accident,  that does not mean that the claims asserted by Gotham and ZDG against the Excess Insurers arising out of the Personal Injury Actions are part and parcel of a case in which the controversy involves only coverage for property damage and delay damages.  The fact that the claims against the Excess Insurers asserted by Western in this lawsuit were dismissed by Judge Nathan, without the slightest regard to whether

---

[6] AZIC's Employer's Liability and Workers' Compensation Policy is not implicated in Western's claims against Gotham and ZDG.

the Excess Insurers are or are not on the hook for damages that may be asserted against Gotham and ZDG in the Personal Injury Actions, proves that.

Gotham and ZDG take the position that unless all coverage issues for all types of injuries are resolved in one lawsuit, they risk "splitting" their causes of action – which is frowned upon under New York law, *see Conanan v. Oliveri*, 12 Misc.3d 1161(A), 2006 WL 1458242, at *2 (Sup. Ct. Richmond Cnty. May 26, 2006) (quoting *Stark v. Starr*, 94 U.S. 477, 485 (1876) and *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, (1981)).  But there is no question of "splitting causes of action" here. In fact, to the extent that there has been any "splitting causes of action" here (and I do not believe that there has been), it lies in severing from the Personal Injury Actions any dispute over whether Gotham and ZDG – which have already been found to be liable to Jackson and Delgado – are covered for *those* damages (not property or delay damages) under the Zurich and Excess Insurers' policies.[7]

As the Court does not have jurisdiction over the crossclaims, any amendment to the answer to assert the crossclaims would be futile. Therefore, the Court grants the Excess Insurers' motion to dismiss the procedurally improper cross claims. I note that the claims asserted here relate solely to the Personal Injury Actions, so the motion is dismissed without prejudice to Gotham's and ZDG's reassertion of these claims in the forum in which they were originally brought.

Having done so, the Court need not decide whether the crossclaims should be dismissed on any of the Excess Insurers' other grounds for dismissal.

## CONCLUSION

For the reasons discussed above, the Excess Insurers' and Western's motions to dismiss are granted. Gotham and ZDG's crossclaims are dismissed without prejudice, and their

---

[7] The Court expresses no opinion about whether the correct course of action would have been to bring a separate coverage action covering the Personal Injury claims in both lawsuits in the New York State Supreme Court.

counterclaims are dismissed with prejudice.

The Clerk of Court is respectfully directed to remove the motions at Docket Numbers 194 and 364 from the Court's list of open motions. This constitutes a written opinion.

Dated: November 1, 2023

_____
U.S.D.J.

BY ECF TO ALL COUNSEL